ANDRESEN et al. v. CLEAR RIDGE AVIATION, Inc.

Civ. No. 59–47.

United States District Court
D. Nebraska, Omaha Division.

March 17, 1949.

Paul F. Good and Monsky, Grodinsky, Good & Cohen, all of Omaha, Neb., for plaintiffs.

Edwin Cassem and Kennedy, Holland, DeLacy & Svoboda, all of Omaha, Neb., for defendant.

DELEHANT, District Judge.

The defendant, as the prevailing party[1] has moved for the taxation of certain items costs in the action, beyond those taxed by the clerk.[2] It first tendered a motion in very general terms, but thereafter submitted its demands in itemized form in an Amended Motion (filing 30). Oral arguments have been made and briefs have been submitted upon the latter pleading; and the court now rules upon it.

Certain items claimed in the motion are obviously recoverable; and, without formal discussion, their allowance is now announced. They include:

| | | |
|---|---|---|
| Item I, 2, | Photostatic copies, provided upon demand of plaintiffs' counsel, of various licenses, permits, and airport plats | $ 6.00 |
| Item III, 6, 7, | Witness fee paid to Max Muhlbach | 2.00 |
| | Witness fee paid to William R. Brown | 2.00 |
| | (See discussion respecting mileage and reimbursement for lost wages) | |
| Item IX, 38, | United States Marshal's fees actually paid by defendant above the amount taxed by the clerk.. | 1.50 |
| | | $11.50 |

[1] See memorandum and judgment filed July 10, 1948 (filings 20 and 21).

[2] The costs taxed by the clerk included only (a) clerk's fees, $15; (b) marshal's fees, $5.30; (c) attorneys docket fee, $20. In a statement of fees (filing 23) furnished to counsel, she indicated as a taxable item certain witness fees but did not identify the witnesses or tax such fees in any amount.

■ In connection with the witness, William R. Brown, the defendant asks to recover the additional sum of $3.60 on account of "mileage and reimbursement of lost wages". There is no allocation to the two items of the amounts respectively paid on account of them. The reimbursement of lost wages will not be allowed. But the payment in respect of mileage will be granted, conditioned on the defendant's seasonable showing by affidavit of its amount.

Broadly identified, and reserving individual items for specific mention and comment, the other claims are for the expense of (a) certain photographic and sound film recording evidence prepared and used upon the trial; (b) compensation paid to three expert witnesses incident to the identification, explanation and presentation in court of the sound film material; and (c) various obligations incident to the taking of sundry depositions of plaintiffs, none of which were introduced in evidence upon the trial.

■ While no statute identifies those expenditures as taxable costs, that circumstance is not alone decisive upon the issue of their allowability. This action for injunctive relief is equitable in its nature. The power of the court in awarding costs in it is, therefore, not circumscribed as narrowly as is the judicial authority respecting costs in an action for the recovery of a judgment for money only. In cases of the latter sort, Henkel v. Chicago St. Paul M. & O. R. Co., 284 U.S. 444, 52 S.Ct. 223, 76 L.Ed. 386 is directly instructive. It dealt, on certification of a question, with the compensation paid to expert witnesses who testified in his behalf, by the successful plaintiff in an action under the Federal Employers' Liability Act, 45 U.S.C.A. § 51 et seq., brought in the United States District Court for the District of Minnesota for the recovery of damages for the death of plaintiff's intestate; and held it not to be recoverable as costs, although it would have been allowable in the trial court's discretion if the action had been prosecuted in the state courts of Minnesota. The specification of fees in Title 28 U.S.C.A. §§ 600a to d, especially section 600c [3], was held to

be a controlling limitation upon the power to tax witness fees as costs in such cases.

The Henkel opinion was examined and distinguished in Swan Carburetor Co. v. Chrysler Corp., D.C.Mich., 55 F.Supp. 794, 797, a patent infringement proceeding, in which the writer of the opinion said: "Plaintiff, in its brief, relies mainly upon the case of Henkel v. Chicago, St. P. M. & O. R. Co., 284 U.S. 444, 52 S.Ct. 223, 76 L. Ed. 386, and circuit and district court opinions based upon the doctrine enunciated therein. That case involved an action at law, and it is clear that that decision is not decisive of the question of allowance of costs in equity. As to the effect of Rule 54(d) of the Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c, on the question of allowance of costs in law cases, see Harris v. Twentieth Century Fox Film Corp., 2 Cir., 139 F.2d 571. If defendant is entitled to tax the disputed items, it is upon the theory that such allowance may be made by a court of equity in accordance with sound equity practice. Sprague v. Ticonic Nat. Bank, supra [307 U.S. 161, 59 S.Ct. 777, 83 L.Ed. 1184]; Reconstruction Finance Corp. v. J. G. Menihan Corp., 312 U.S. 81, 61 S.Ct. 485, 85 L. Ed. 595; 20 C.J.S., Costs, § 214, page 449."

Sprague v. Ticonic Bank, 307 U.S. 161, 59 S.Ct. 777, 83 L.Ed. 1184, cited in the foregoing quotation is unquestionably distinguishable in its factual setting from the present case in that it arose out of a suit in which the moving and prevailing party had vindicated the right of herself and others, strangers to the case, to a lien for their claims upon a specific fund, and thereafter sought to obtain reimbursement out of the fund for certain expenses of the action. It is nevertheless instructive upon the source of the power of federal courts to award certain expenses of litigation, beyond those fixed by rule or statute, as costs in equity cases. Concluding an historical study of the subject, the writer of the opinion declares, supra, 307 U.S. at page 166, 59 S.Ct. at page 780: "Plainly the foundation for the historic practice of granting reimbursement for the costs of litigation other

---

[3] In the language and arrangement of the statute then effective (i. e. 1931)

[Revised Judicial Code, 28 U.S.C.A. §§ 1821, 1871].

than the conventional taxable costs is part of the original authority of the chancellor to do equity in a particular situation."

Precedent for the declared authority and its occasional, though not invariable, exercise substantially antedated the Sprague ruling. In the patent infringement case of Hussey v. Bradley, 5 Blatchf. 210, Fed. Cas.No.6, 946a allowance was made of the expense of copies of models deposited in the Patent Office, though, otherwise, costs were sharply restricted. Essentially like ruling was made in Wooster v. Handy, C.C.N.Y., 23 F. 49 and Cornelly v. Markwald, C.C.N.Y., 24 F. 187 The existence of judicial discretion to allow counsel fees to a plaintiff who, as joint owner of a fund or property had, in litigation, protected it for the eventual benefit of all of its owners, was affirmed, but the allowance requested was denied, in Cuyler v. Atlantic & N. C. R. Co., C.C.N.C., 132 F. 570. In Cheatham Electric Switching Device Co. v. Transit Development Co., 2 Cir., 261 F. 792 the court, while declaring the flexibility of the court's power to award costs in equity, denied its right to allow enlarged fees for expert witnesses. Later, in Victor Talking Machine Co. v. Starr Piano Co., 2 Cir., 281 F. 60, the same court allowed as costs in a patent case "expenditures for motion pictures and photographs of cutting tools in operation and of the grooves made by those tools, *where both tools and grooves were microscopic, and the pictures were necessary to enable the court to understand the processes involved.*" (Emphasis added). In Appliance Inv. Co. v. Western Electric Co., 2 Cir., 61 F.2d 752, the expense incurred by the successful defendant in a patent infringement case in providing clarifying simplified drawings of patents bearing on the litigated issues was allowed as costs. Referring to the taxability of the expense of models in the patent infringement case of T. H. Symington & Son v. Symington Co., D.C.Md., 12 F.Supp. 391, 394, the court explained its ruling in this manner: "Assuming that it is properly within the power of the court in its discretion, in a patent infringement suit in equity, to make allowance for the cost of models such as is here

involved, in my opinion, the discretion ought not to be exercised in favor of the allowance, in view of the very generally expressed views to the contrary illustrated by the numerous cases above cited which have dealt specifically with the particular subject. It is true that most of the models, the cost of which is here challenged as taxable, were used as exhibits and were very helpful, argumentatively at least, to the defendant's case. Quite a number of them, however, were, I think, not necessary at all in the particular case and some few apparently were not actually offered in evidence and their inclusion in the tax bill was therefore probably inadvertent. No order of court was obtained to authorize making them and charging them in the costs. The defendant acted purely on its own initiative and exercised its own discretion in the matter. Even the cases relied upon by the defendant point out the possibility of thereby imposing an unreasonable burden of costs upon the unsuccessful party. It is not meant to imply that the failure to obtain a prior order of court was necessarily fatal to the subsequent taxation of the cost of such models. Indeed before argument of the case on its merits it would be rather difficult to determine in advance the necessity for such models. It is not doubted, however, that the court has the power to make such order where it is apparently reasonably necessary for the proper understanding of the controversy."

See also Gold Dust Corporation v. Hoffenberg, 2 Cir., 87 F.2d 451; Ex parte Peterson, 253 U.S. 300, 40 S.Ct. 543, 64 L. Ed. 919; Reconstruction Finance Corp. v. J. G. Menihan Corp., 312 U.S. 81, 61 S.Ct. 485, 85 L.Ed. 595.

Rule 54(d), Federal Rules of Civil Procedure, 28 U.S.C.A.,[4] provides, with respect to the allowance of costs on the entry of judgments, that: "Except when express provision therefor is made either in a statute of the United States or in these rules, costs shall be allowed as of course to the prevailing party unless the court otherwise directs."

It is unnecessary, on this occasion, to consider the impact of that language upon the

---

[4] Effective September 16, 1938.

taxation of costs in actions for the recovery of money only. But in suits in equity, it seems not essentially to have altered, but rather to have adopted, confirmed, and regularized the practice which (vide supra) judicial administration had consistently developed. That view is expressed in Harris v. Twentieth Century Fox Film Corp., 2 Cir., 139 F.2d 571, 572.

And rulings subsequent to the operative date of the rules have persisted in, and somewhat amplified, the former practice; in which course, they have undoubtedly been fortified by the cited rule. Harris v. Twentieth Century Fox Film Corp., supra; Swan Carburetor Co. v. Chrysler Corp., supra; Gotz v. Universal Products Co., D.C.Del., 3 F.R.D. 153; W. F. & John Barnes Co. v. International Harvester Co., 7 Cir., 145 F.2d 915, certiorari denied, 324 U.S. 850, 65 S.Ct. 687, 89 L.Ed. 1410; Federal Deposit Insurance Corp. v. Fruit Growers Service Co., D.C.Wash., 2 F.R.D. 131; Abel v. Loughman, D.C.N.Y., 1 F.R.D. 734; Schmitt v. Continental-Diamond Fibre Co., D.C.Ill., 1 F.R.D. 109; Republic Machine Tool Corp. v. Federal Cartridge Corp., D.C. Minn., 5 F.R.D. 388; Curacao Trading Co. v. Federal Insurance Co., 2 Cir., 137 F.2d 911.

In Abel v. Loughman, supra, emphasis is placed on the reserve which ought properly to characterize a court's assessment against the losing party of "additional costs" and the prudent avoidance therein of the error of his unnecessary and inappropriate penalization. Adverting to the Harris, Barnes Co., Gotz and Schmitt cases, supra, Judge Nordbye, in the Republic Machine Tool Corp. opinion reasoned in this fashion [5 F.R.D. 389]: "These cases all hold that in certain instances and under some circumstances the stenographic fees connected with the taking of depositions may be taxable as costs. But each of the cases turns on its own facts. None holds that the cost may be taxed as a matter of right. They recognize the court's discretion in the matter. In the instant case, the depositions were not put into evidence. They were used only by plaintiff's counsel, and he is the only one they appear to have aided. They helped him to gain an over-all view of the general facts of the lawsuit. They did not help anyone else solve any of the issues submitted to the Court. In the final analysis, the depositions were things used solely for the benefit of the plaintiff as distinguished from a means used or, so far as the record shows, intended to be used to facilitate the determination of the case. If these fees were taxed, little justification would remain for the Court to refuse to tax all expenses incurred by plaintiff in investigating the case and determining the facts. Although the fact that the depositions were not placed in evidence or used in the case may not be controlling in determining if they may be taxed as costs, Federal Deposit Ins. Corp. v. Fruit Growers Service Co., D.C.Wash.1941, 2 F.R.D. 131, 132; Curacao Trading Co. v. Federal Ins. Co., 2 Cir., 1943, 137 F.2d 911, the considerations which prompted the courts to allow the deposition costs in the cited cases do not exist here."

The power to tax the items of expense presently requested undoubtedly exists; and the standards by which it is to be exercised have been erected with reasonable assurance. There remains the related, though distinct, problem of its employment in the instant case, in respect of the several expenditures for which reimbursement is sought. Brief mention of each of them with a statement of the court's ruling upon it should be made.

A significant preliminary observation should be set down, which is applicable to all units of the defendant's present claim. The court considers that the plaintiffs instituted and prosecuted this action, generally to enjoin the continued operation of the defendant's airport in their immediate neighborhood, in good faith and in the assertion of contentions which, or at least some of which, they believed to be well founded, and not for the purpose of harrassment or oppression. While the court found against them upon the merits of their demand, its ruling involved no finding of unworthiness or malice in the tender of their claim. Resentment against the defendant's intrusion into their rural or suburban neighborhood, and consequent anger and ill will against it, were indeed revealed by some of them; but those sentiments fell far short of malice in the sense in which the institu-

tion of litigation may be said to be malicious. Their resentment was not irrational but clearly intelligible and calculated to attract a certain measure of disinterested sympathy. And they were certainly within their rights in seeking a ruling favorable to themselves upon a legal problem which is still somewhat novel, both locally and throughout the country.

Accordingly, the court is not moved to impose an inordinate burden of costs upon the plaintiffs on the ground alone that they initiated the proceeding and subjected the defendant to the expense of its successful resistance. Expense of that sort is the portion of every one who is sued. And, whatever the practice in other countries, with us, much of it is not recoverable in the way of costs.

Photographs of Airport Received In Evidence, Including Enlarged Photograph—(Item I, 1, $54.00)

█ The court is led to allow this item. The photographs were evidence of a character that is immediately suggested by the nature of the action and they were helpful and highly instructive to the trial judge in many respects. And if the final judgment had been appealed, they would have been of even greater assistance to the appellate courts by whose members the actual observation[5] of the defendant's premises and its surrounding area would have been impossible. While itemization and proof of the reasonableness in amount of the disbursement are less explicit than might be desired, the sum appears to the court to be fair and not exaggerated.

Motion Picture Sound Film Received In Evidence (Item I, 3, $800.00)

█ Briefly explained, this specification refers to a substantial quantity of sound film, largely in colored photography, by which the defendant undertook, through the reproduction of the appearance and sound of planes in flight at or in the vicinity of its airport and other incidents of its operation, in association with similar reproductions of unrelated but familiar occurrences as reference material, to demonstrate certain features of its operations and principally the intensity and character of noise produced by its flights. The plaintiffs, in their behalf, introduced a less elaborate and less extensive sound recording, but without accompanying pictures. The court disallows this claim.

The material thus presented by the defendant was held by the court to be competent and relevant evidence in the trial of the principal issue. But it may not be regarded as essential or vital to the decision. With no anticipation of the present controversy, the court, in its memorandum[6] explanatory of its ruling in the action, made this statement concerning the recorded evidence: "To demonstrate the character and intensity of such localized noises, the parties separately recorded some actual sounds and presented them as evidence upon the trial. For the plaintiffs a sound recording taken, in its totality, on different dates at the Andresen premises was exhibited. And for the defendant, a somewhat more elaborate sound recording with synchronized colored picture film taken at several points was shown. Some argument is encountered respecting the relative merits of those several reproductions. Both have some value. But neither of them is contolling or substantially demonstrative or persuasive upon the issue of the nature and intensity of noise at or near the field's margins."

That fairly reflects the court's persisting reaction to the demonstration. It represents a refinement in proof and in trial technique of which no criticism is now made or implied. But the court does not feel that the plaintiffs should be compelled to reimburse the defendant for its cost. Industry and ingenuity in the preparation of material for the court's instruction is altogether praiseworthy. It should find its reward, on occasion in the results of litigation. But an unsuccessful plaintiff's cost bill should rarely be made to depend for its amount upon the resourcefulness or energy of the defendant's counsel. The precedent of taxing costs arising out of financial liberality, not to say extravagance, in

---

[5] At the conclusion of the trial, the judge, with counsel for the parties, made an actual examination of the critical area.

[6] See page 32 thereof.

the preparation of the prevailing party for trial, is dangerous, and may all too easily lead to intolerable abuse. And this observation may be regarded as pertinent also to the succeeding items of the defendant's claim.

### Expert Witness Fees of Three Witnesses Called by Defendant (Item II, 4 and 5—$333.25)

■■ These payments, shown clearly to have been made, cover the charges for attendance and testimony by experts in sound recording and motion picture photography, in connection with the presentation to the court of the last previous item. That there is precedent for the allowance in some circumstances of such items is not doubted. E.g. W. F. & John Barnes Co. v. International Harvester Co., supra. But the setting of the testimony in this case does not justify it. The nature of the evidence actually involved has already been adverted to. But, more significantly, this court considers that, only in exceptional instances, should an unsuccessful litigant be compelled by the court to repay his adversary's outlay for expert testimony. The observations in Cheatham Electric Switching Device Co. v. Transit Development Co., supra, upon the approximation to advocacy of the ministry of the expert witness in his usual service are well taken and instructive. The claim, as made, will be denied.

But the witnesses identified actually testified, and some of them on more than one day. The defendant is entitled to the taxation of their fees at the statutory rate (See Title 28 U.S.C., Section 600(c) [now § 1821]) and their proper mileage, if any. Accordingly, the denial of the taxation of these items is made with express reservation of the right of the defendant to make, within a prescribed time, a showing as to mileage properly allowable on account of the three witnesses. And the clerk is being directed to tax as costs the ordinary witness fees of those witnesses for the number of days on which, as the record may disclose or a supplemental showing, if any, of the defendant establish, they testified; and their mileage, if any, disclosed by such supplemental showing.

### Expenditures Incident to Taking of Depositions of Plaintiffs in Advance of Trial (Items IV, $35.00; V, $44.75; VI, $11.75; VII, $47.75; and VIII, $32.50)

■ These disbursements were all made on account of depositions of persons who were plaintiffs at the time of taking for discovery purposes. They were taken by the defendant on its own motion, without leave or direction of court, upon notice and after the service of process for the compulsory appearance of the witnesses. They were not introduced in evidence, and were not used at all upon the trial, except that two of the plaintiffs, Alfred Hansen and Hazel Andresen, were severally asked upon cross examination whether they had made in their depositions statements considered by defendant's counsel to have been at variance with aspects of their testimony before the court, and promptly admitted making the statements inquired about.

The payments were for the following elements of expenditure: Item IV, witness fees, and, in the case of three of the parties, mileage, demanded by and paid to the plaintiffs as a condition to their appearance to testify; Item V, constable fees for the service of subpoenas on the plaintiffs incident to the depositions; Item VI, witness fees and constable service charges in respect of the notices to take depositions of three persons, including one married couple, who, contending that they had been included as plaintiffs without their knowledge and consent, withdrew from the case before its trial; Item VII, the cost, presumably not otherwise claimed, of the depositions of Alfred Hansen and Hazel Andresen referred to in the cross examination of those two plaintiffs, as witnesses, supra; and Item VIII, a time charge for depositions not transcribed paid to two reporters, by whom the testimony in the depositions was taken stenographically.

In respect to depositions taken in anticipation of a trial, there is authority for the taxation of their costs in some circumstances; and the fact that the testimony was taken without previous order of court, and was not actually introduced upon the trial

is not a sufficient reason for their disallowance. Harris v. Twentieth Century Fox Film Corp.,[7] supra; Federal Deposit Insurance Corp. v. Fruit Growers Service Co., supra; Republic Machine Tool Corp. v. Federal Cartridge Corp.,[8] supra; Gotz v. Universal Products Co., supra; Curacao Trading Co. v. Federal Insurance Co., supra; and W. F. & John Barnes Co. v. International Harvester Co., supra.

But a review of the cases in which such costs have been taxed persuades this court that (with the exception hereinafter noted) there is no situation in the present case which should be allowed to prompt their taxation. What is disclosed on this occasion is the taking by a defendant of the depositions of his adversaries. It differs, in degree not in kind, from the ordinary exploratory deposition of a party, principally, if not entirely in the number of witnesses whose examination was suggested by the number of plaintiffs. The defendant's course in the premises reflects thorough, exhaustive and entirely creditable preparation for trial by its counsel. But the court does not believe that the plaintiffs should be required to pay for it. (vide supra)

In the court's appraisal no essentially different ruling is compelled in respect of the depositions of the three plaintiffs who withdrew from the case before its trial. The court is not prepared, in the light of the entire record in the action, to find that they were altogether ignorant of their presence in the caption of the case until the service upon them of subpoenas.[9] Nor should the Alfred Hansen and Hazel Andresen depositions be accorded treatment different from those of the other plaintiffs. The proposed impeachments at which their limited employment was aimed were not critically significant in the submission of the case. And their narrowly limited use is inadequate to distinguish their status from that of the other depositions. Besides for their use in very limited measure by way of impeachment, their transcription, though convenient, was not strictly necessary.

Generally, therefore, the claim to reimbursement for the cost of the depositions is being denied. However, one reservation from the denial should be made. Incident to Item V of the claim, a showing, satisfactory to the court, at least, is made that some of the plaintiffs deliberately concealed themselves in or about their homes in order to prevent the service upon them of the subpoenas. The consequence clearly appears to be the magnification of the cost of serving the subpoenas; but in what precise measure does not appear. The court is disposed to tax to the plaintiffs such portion of the cost of serving the subpoenas as, upon a showing by affidavit, may be established, in terms of money, as representing the enlargement of this item in consequence of the attempted evasion of process by any one or more of the plaintiffs. Mere absence from home, not demonstrably attributable to a design to avoid process, will not suffice in the case of any party. And in each instance the showing must separate the expense inevitable in any event (which will not be taxed) from that necessitated by the concealment of the party (which, upon the filing of the showing, the clerk will tax).

---

[7] Although, in citing the Harris case, the writer hereof expressly abstains from assent to its assertion to the effect that if a plaintiff in receipt of a notice to take depositions under Rule 30 Federal Rules of Civil Procedure, makes no motion for an order of court preventing their taking, the case "must be considered as if the court had directed the depositions to be taken" [139 F.2d 572].

[8] In which the power to tax such costs was vindicated, but actual taxation was denied.

[9] Upon this question, as upon certain others, the court distinguishes, in its appraisal of the affidavits in support of the motion, between statements of fact and manifest conclusions and arguments of the affiants.