238

**FARRAR v. FARRAR et al.**

Civ. No. 994.

United States District Court
W. D. Arkansas, Fort Smith Division.

July 16, 1952.

Warner & Warner, Fort Smith, Ark., Greenhaw & Greenhaw, Fayetteville, Ark., for plaintiff.

Edgar E. Bethell, Daily & Woods, Fort Smith, Ark., for defendants.

JOHN E. MILLER, District Judge.

Judgment upon stipulation of the parties was entered on May 3, 1952, for the plaintiff. Following the provisions of the judgment and under Rule 54(d), Federal Rules of Civil Procedure, 28 U.S.C.A., the Clerk taxed costs in favor of the plaintiff in the sum of $318.35. Within the time permitted by the rule the defendants filed a motion to retax the costs and for a review by the court of the Clerk's action.

The defendants attack an item of $277.35 allowed by the Clerk as "costs incident to taking of depositions." Comprising this item is the sum of $105 costs paid by plaintiff for taking discovery depositions of the defendants in Fort Smith, Arkansas; the sum of $144.65 stenographic fees and $27.70, notary fee, paid by plaintiff for the taking of the deposition of the plaintiff in Sacramento, California.

The defendants contend that these items are not properly allowable and in equity should be disallowed.

The Court believes that the history and nature of the case should be considered in resolving the question of whether the items attacked should be taxed as costs against the defendants.

The plaintiff is the widow of W. T. Farrar who died in 1910 leaving three sons, E. Claire Farrar, who at that time was 25 years of age, Frank Farrar, 20 years of age, and Hal G. Farrar, 9 years of age. They were living at Springdale, Arkansas, at the time of the death of W. T. Farrar. The plaintiff as the surviving widow of W. T. Farrar received approximately $76,000 in cash and other assets from the estate. Following the death of W. T. Farrar, E. Claire Farrar, the oldest son, at the request of the plaintiff took charge of her bonds, stocks and securities and managed them so successfully that he increased them in value to,

approximately $150,000 prior to his death on August 21, 1950. During this time the plaintiff was frugal and also had the assistance of her son, Hal G. Farrar. In fact, most of the time the family seemed to be rather intimate and cooperative.

The defendant, Eugene Farrar, is the only son and heir of E. Claire Farrar, deceased, and the defendant, Inez Farrar, is the surviving widow of E. Claire Farrar.

The plaintiff resides in Sacramento, California, and is eighty-three or eighty-four years of age. Her health is not good. During the pendency of the suit she was under a doctor's care and was regularly attended by a nurse.

Upon the death of E. Claire Farrar, the defendant, Eugene Farrar, was appointed executor of his estate and immediately entered upon the discharge of his duties as such. As heretofore stated, E. Claire Farrar had been very successful in handling the property of his mother, the plaintiff, and at the time of his death had in his possession a great many stocks, bonds, and other securities. This property came into the possession of the defendant, Eugene Farrar, by reason of his appointment as executor of his father's estate.

Demand was made upon him by the plaintiff through her surviving son, Hal G. Farrar, for the possession of the stocks, bonds, and securities owned by the plaintiff. A controversy arose between the defendant, Eugene Farrar, and his uncle, Hal G. Farrar, who was acting under power of attorney for the plaintiff. The defendant, Inez Farrar, as the surviving widow of E. Claire Farrar, and the defendant, Eugene Farrar, as the executor of the estate of E. Claire Farrar, contended that the estate of E. Claire Farrar should be compensated for the services performed by him in the management of the property for more than forty years, and further that the plaintiff had agreed with her deceased son, E. Claire Farrar, to pay such compensation. They also questioned the competency of the plaintiff to grant a valid release from liability for the property then being held by Eugene Farrar as executor. As a result of this controversy, the plaintiff filed this suit to recover the possession of certain stocks, bonds, and securities in the actual possession of the defendant, Eugene Farrar, and certain receipts for bonds and other securities that were in a bank in the city of St. Louis, Missouri, where they had been placed by E. Claire Farrar while managing the property of the plaintiff.

In due time after responding to requests for admissions, the defendants filed an answer and counterclaim.

The answer, inter alia, states:

"5. The said defendant denies that he has wrongfully or unlawfully detained any property of the plaintiff. Defendant states the facts to be that for forty-one years his father, E. Claire Farrar, handled the affairs of his mother who is the plaintiff in this case. E. Claire Farrar died testate August 21, 1950, and in October, 1950, the defendant, Eugene Farrar, was appointed executor of the estate, and as such took custody and charge of the effects left by his deceased father. This defendant further states that the value of the securities and receipts in his possession as executor of his father's estate is approximately One Hundred Fifty Thousand And No/100 Dollars ($150,000.00) to Two Hundred Thousand And No/100 Dollars ($200,-000.00). The plaintiff is a very elderly lady, aged about 85 or 86, is almost totally deaf, and in a very feeble physical condition. Because of her age and condition, this defendant has reasonable doubts as to her capacity to receive the property now in his possession, and to give him effective legal acquittance from further liability or responsibility for said property. The plaintiff has never offered any such acquittance from such responsibility and liability.

"6. Said defendant hereby formally tenders to the registry of this Court the stock certificates and receipts belonging to the plaintiff which are now in his possession as executor, and prays that the Court determine the competency of the plaintiff to receive this property and effectively release

the said defendant from further responsibility from the same or its proceeds."

In the counterclaim the defendant, Eugene Farrar, as executor, after alleging the facts concerning the manner of handling the property of the plaintiff by E. Claire Farrar, his testator, further alleged that it was his information and belief that his father was to be compensated by a bequest of one-half of the accumulated property and that pursuant to such agreement the plaintiff executed and placed in the First National Bank of St. Louis, Missouri, a will by the terms of which the agreement would be consummated at her death; that the will had been withdrawn by the plaintiff and she had made some unknown disposition of the same; that the plaintiff is now living with Hal G. Farrar who has obtained domination and control over the plaintiff to the extent that she has or is about to breach her agreement with the defendant's testator, and that as executor of the estate of the said E. Claire Farrar, he is the proper person to assert the interest of his testator's estate in the agreement between the testator and the plaintiff.

The said defendant asked that the court award reasonable compensation for the services of his testator in protecting and preserving the property of the plaintiff and that the court decree specific performance of the agreement of the plaintiff to compensate E. Claire Farrar for his years of service to the plaintiff, or in the alternative that he as executor have judgment against plaintiff for the reasonable value of the services rendered the plaintiff by E. Claire Farrar.

To this answer and counterclaim the plaintiff filed a reply and certain motions, one of which was that the court was without jurisdiction to determine the competency of the plaintiff to receive the property and effectively release the defendant executor from further responsibility and liability. The plaintiff also moved to require the defendant, Eugene Farrar, to make a more definite statement regarding the alleged request of the plaintiff to her son, E. Claire Farrar, to take charge of said property and to invest and reinvest same for her.

The plaintiff also denied that she was incompetent to give an effective and legal acquittance from further liability or responsibility for the property.

The answer of the plaintiff to the counterclaim and the reply of plaintiff to the answer, which included the various motions, was filed on February 26, 1952. On February 25, 1952, the day preceding the filing of the multi-pleading by the plaintiff, the plaintiff had taken the discovery depositions of the defendants at a cost of $105. These depositions were taken under a stipulation of the parties, "upon oral examination by counsel, for discovery." All objections for informalities in the taking, transcribing, signing, etc., were waived but all other objections for incompetency, irrelevancy, and immateriality were reserved in the stipulation. Immediately following the taking of the discovery depositions of the defendants the plaintiff proceeded to give her deposition on February 29, 1952, at Sacramento, California. This deposition was likewise taken upon stipulation of counsel and the plaintiff was represented at the taking of the deposition by C. R. Warner, Esquire, while the defendants were represented by Edgar E. Bethell, Esquire, both of Fort Smith, Arkansas.

All the depositions were filed April 1, 1952, and as heretofore stated a judgment for the plaintiff was entered by stipulation of the parties. The judgment provides:

"1. That plaintiff be and is hereby granted permission to withdraw said motions, and each of them, and the same are hereby stricken;

"2. That the allegations in said complaint are true and that said plaintiff, Dora Belle Farrar, have and recover of and from defendants and said Eugene Farrar, as executor of said estate, all of the securities, safekeeping receipts for bonds, and certificates for shares of corporate stock, tendered and deposited by said Eugene Farrar, into the registry of this Court on February 25, 1952, as set forth and

described in the Clerk's receipt therefor issued that date to said defendants, and the Clerk is hereby directed to deliver over forthwith all of the same to plaintiff, or her attorneys of record;

"3. That the counterclaims of the defendant, Eugene Farrar, and of Eugene Farrar as executor of the estate of E. Claire Farrar, deceased, respectively, against the plaintiff, Dora Belle Farrar, be and the same are hereby dismissed with prejudice;

"4. That the third-party claim of the said Eugene Farrar as executor of the estate of E. Claire Farrar, deceased, against said Dora Belle Farrar be and the same is hereby dismissed with prejudice;

"5. That the said plaintiff and third-party defendant, Dora Belle Farrar, have and recover of and from defendants all costs herein laid out and expended."

The Court has been furnished with excellent briefs by counsel for plaintiff in support of her contentions, but counsel for defendants have not favored the Court with any brief or argument in support of their contentions, and except for the fact that the Court is interested in rendering justice, the motion of defendants might properly be denied. The time may come when the press of business will prevent the Court from making independent research on questions before it, and the fact that the Court in this instance is taking no peremptory action should not be considered as a precedent to be followed in other cases where counsel have not been prompt in supporting their contentions.

Prior to the adoption of the Federal Rules of Civil Procedure, costs in cases at law followed the judgment as a matter of right, and the Court had no discretion to withhold costs from the prevailing party or to apportion them. Ex parte Peterson, 253 U.S. 300, 40 S.Ct. 543, 64 L.Ed. 919. At page 318 of 253 U.S., at page 549 of 40 S.Ct., the Court said:

"It has also been generally held that this right to costs of the prevailing party in actions at law extends to the entire costs in the trial court, and that the court is without power to make an apportionment based upon the fact that the prevailing party has failed in part of his claims, or that for other reasons only a part or none of the costs should in fairness be allowed."

In Equity, the prevailing party was prima facie entitled to costs but the court had a wide discretion to deny them or to make some equitable apportionment when equity and fairness required it. Hodgman v. Atlantic Refining Co., D.C.Del., 20 F. 2d 949. Of course the discretion reposed in the court was not an arbitrary one, and the court was to be governed by established rules. The burden was upon the losing party to show that in equity and good conscience the prevailing party should not recover costs or that the costs should be apportioned.

Rule 54(d) of the Federal Rules of Civil Procedure, 28 U.S.C.A., provides, "costs shall be allowed as of course to the prevailing party unless the court otherwise directs". This seems to be a restatement of the old Equity rule with somewhat more emphasis on the prima facie right of the prevailing party to recover costs.

Rule 2 of the Federal Rules of Civil Procedure, 28 U.S.C.A., provides:

"There shall be one form of action to be known as 'civil action'."

This rule, together with rules 38 and 39, which provide for demand for jury trial, waiver, and trial by jury and by the court, present a united procedure. Under present laws the only distinction between civil actions is between jury and nonjury cases.

In Groome v. Steward, 79 U.S.App.D.C. 50, 142 F.2d 756, the court said:

"But the distinction between law and equity has no procedural significance whatever except where the right to a jury trial has been affirmatively denied, after a timely demand, in an action which historically would be considered as arising at 'law'."

See, 2 Moore's Federal Practice, Second Edition, Pages 305–306.

Thus the form of action brought by the plaintiff is immaterial and the question before the court must be resolved under the provisions of Rule 54(d), and before the court can direct that the plaintiff should not recover her entire costs, the facts must be such as to convince the court that in equity and fairness the plaintiff should be denied her costs or they should be apportioned.

■ The discretion of the court must be governed by the situation and circumstances of the particular case unless the same or closely similar situations and circumstances have reoccurred in enough cases to result in a measure or rule of decision. Hartford-Empire Co. v. Obear-Nester Glass Co., 8 Cir., 95 F.2d 414–417. If the act of the judge is not limited by fixed rules of law the action must not be predicated upon arbitrary determination, capricious disposition, or whimsical thinking, but must be the result of the exercise of discriminating judgment within the bounds of reason and must promote substantial justice.

"The Rules (Federal Rules of Civil Procedure) are silent as to which party is to bear the burden of the expense involved in taking depositions. As a general principle, the costs of taking depositions will be taxed in favor of the prevailing party, if the taking of the depositions was reasonably necessary, even though they may not have been used at the trial. As with costs generally, however, this is a matter within the sound discretion of the trial court, and costs may be denied. Some courts, for instance, have refused to impose upon an unsuccessful litigant costs incurred by his opponent in taking 'discovery' depositions as a part of his general preparation for trial and not for use as evidence * * *." 4 Moore's Federal Practice, Second Edition, Pages 1207–1208.

There is no statute directing the allowance of the disputed items. 28 U.S.C.A. § 1920. But the plaintiff in support of her contention cites such cases as Harris v. Twentieth Century Fox Film Corp., 2d Cir., 139 F.2d 571; Hartig v. Schnoec-

knecht, D.C.Conn. 1951, 11 F.R.D. 166; Hancock v. Albee, D.C.Conn. 1951, 11 F.R.D. 139; Uniflow Mfg. Co. v. Superflow Mfg. Corp., D.C.Ohio 1950, 10 F.R.D. 589; Curacao Trading Co., Inc., v. Federal Ins. Co., 2d Cir., 137 F.2d 911, as well as some other district court cases and seems to rely upon the first sentence of the statement in 4 Moore's Federal Practice, Second Edition, Page 1207, quoted above.

In Republic Machine Tool Corp. v. Federal Cartridge Corp., D.C. Minn., 5 F.R.D. 388, 389, Judge Nordbye said:

"Plaintiff cites the following cases in support of its contention that the stenographic fees for certain depositions be allowed: Harris v. Twentieth Century Fox Film Corp., 2 Cir., 1943, 139 F.2d 571; W. F. & John Barnes Co. v. International Harv. Co., 7 Cir., 1945, 145 F.2d 915; Gotz v. Universal Products, D.C., 3 F.R.D. 153, 155; and Schmitt v. Continental-Diamond Fibre Co., D.C., 1 F.R.D. 109. These cases all hold that in certain instances and under some circumstances the stenographic fees connected with the taking of depositions may be taxable as costs. But each of the cases turns on its own facts. None holds that the cost may be taxed as a matter of right. They recognize the court's discretion in the matter. In the instant case, the depositions were not put into evidence. They were used only by plaintiff's counsel, and he is the only one they appear to have aided. They helped him to gain an over-all view of the general facts of the lawsuit. They did not help anyone else solve any of the issues submitted to the Court. In the final analysis, the depositions were things used solely for the benefit of the plaintiff as distinguished from a means used or, so far as the record shows, intended to be used to facilitate the determination of the case. If these fees were taxed, little justification would remain for the Court to refuse to tax all expenses incurred by plaintiff in investigating the case and determining the facts. Although the fact

that the depositions were not placed in evidence or used in the case may not be controlling in determining if they may be taxed as costs, Federal Deposit Ins. Corp. v. Fruit Growers Service Co., D.C.Wash., 1941, 2 F.R.D. 131, 132; Curacao Trading Co. v. Federal Ins. Co., 2 Cir., 1943, 137 F.2d 911, the considerations which prompted the courts to allow the deposition costs in the cited cases do not exist here. * * *"

As stated by Judge Nordbye, each case turns on its own facts, and no case holds that such items of costs as are involved in the instant case may be taxed as a matter of right. It would unduly extend this opinion to discuss all of the cases cited by plaintiff, and no useful purpose would be served by such discussion because the question must be determined by a fair appraisal of the facts of the instant case.

The plaintiff, being a nonresident, could have been compelled to appear in the district to give her deposition although the court might have ordered otherwise for good cause. 4 Moore's Federal Practice, Second Edition, Page 1218, and cases cited.

In Collins v. Wayland, 9 Cir., 139 F.2d 677–678, it is stated:

"The suggestion that, because appellant resided in Oregon, the District Court of the United States for the District of Arizona, whose jurisdiction he had invoked, could not require him to give a deposition in Arizona is untenable. * * *"

The attorneys for the respective parties in the preparation of the case for trial displayed a commendable spirit of cooperation. Notwithstanding the expense of travel to California, the attorneys for the defendants did not ask the court to require plaintiff to pay their expense of the trip to and from California. This might have been done, and is often done. See 4 Moore's Federal Practice, Second Edition, Page 2037.

All of the depositions were taken upon stipulation signed by the respective attorneys. No notice was necessary and the expenses of taking the deposition of the

plaintiff because of her residence in California should be considered by the court in determining whether the item now under consideration should be taxed against the defendants.

■ Assuming that it was necessary for the plaintiff to file the suit to obtain possession of her property, yet ·it must be borne in mind that the defendant, Eugene Farrar, had come into possession of the property as the executor of his father's estate. At the time the suit was filed, Eugene Farrar was approximately 43 years old. His father had been in charge of the property for all except 2 or 3 years of Eugene Farrar's life, and although he, as executor, did not claim in the inventory of his father's estate any of the property for the estate of his testator, yet ordinary diligence on his part would seem to require him to investigate thoroughly the exact relationship between his father and the plaintiff concerning the ownership and disposition of these valuable securities. The plaintiff in her argument asserts, "None of these depositions would have been required or taken by plaintiff if the groundless counterclaims and cross-claim of defendants, which have now been dismissed with prejudice, had not been asserted." It is true that the defendants could have surrendered and accepted the statements of plaintiff in her complaint as true without inquiry or investigation, but there is nothing in this case to show that the asserted counterclaims were based upon malice or any intention to harrass the plaintiff. Their action in questioning the competency of plaintiff to give a valid release of liability can not be said to be malicious or unwise, particularly when it is remembered that the plaintiff is a person of advanced age and physically ill. The defendant, Eugene Farrar, was certainly within his rights in seeking a ruling favorable to his testator's estate upon the counterclaims asserted by him. See, Andresen v. Clear Ridge Aviation, Inc., D.C.Neb., 9 F.R.D. 50.

In the memorandum opinion of Judge Lemley in Willie Mai Banks v. Chicago Mill & Lumber Co., D.C.E.D.Ark., 106

F.Supp. 234, 237, in considering a similar question said:

"While litigation should never be encouraged, at the same time it is the policy of a court of equity in doubtful cases not unduly to burden those who in good faith seek relief at its hands, even though mistakenly."

The fact that full and complete investigation disclosed that plaintiff was entitled to recover is not sufficient in itself to charge the costs of these depositions to the defendants, and in view of the facts disclosed by the record, the court is of the opinion that the items of costs herein involved should not be allowed against the defendants and therefore the Clerk's taxation of the contested items should be set aside.

An order in conformity herewith is being entered today.