**John William COX, Plaintiff,**

v.

**Roy MADDUX et al., Defendants.**

**No. LR–65–C–184.**

United States District Court
E. D. Arkansas, W. D.

June 20, 1968.

Walter G. Riddick, Asst. U. S. Atty., Eastern Dist. Ark., Little Rock, Ark., for plaintiff.

James Gannaway, of Gannaway & Darrow, Little Rock, Ark., for defendants.

Memorandum Opinion

HENLEY, Chief Judge.

This is, or rather was, a suit at law brought to recover damages for personal

injuries and wrongful death. The suit arose out of an automobile accident which occurred in Pulaski County, Arkansas, and which involved an automobile operated by Rev. Roy Maddux, a citizen of Arkansas, and a pick-up truck belonging to the United States Navy and occupied by enlisted naval personnel. As a result of the accident Maddux sustained severe personal injuries and his wife was killed. John William Cox, who was riding in the Government vehicle, sustained personal injuries and commenced action against Maddux. Maddux answered and denied liability; he also filed a counterclaim against Cox and a cross-claim against James Darrell Melton who was operating the Government truck at the time of the accident. The Government entered the case on behalf of Cox and Melton; in addition to providing them with a defense the Government asserted certain claims against Maddux.

The case was tried to the Court without a jury and was submitted on oral testimony, two depositions, sketches of the scene of the accident, and numerous photographs. In due course the Court filed a memorandum opinion holding, among other things, that Maddux was not entitled to any personal recovery against the Government although he was entitled to recover in his capacity of executor of his wife's estate. The basis of the Court's holding was that the accident was proximately caused by the concurrent negligence of Maddux and Melton, and that they were equally to blame. That finding barred Maddux's right of recovery in view of the provisions of the Arkansas Comparative Negligence Statute. Ark.Stats., Ann., § 27–1730.1.

The Court of Appeals reversed and taxed appellate costs against the Government. Maddux v. Cox, 8 Cir., 382 F.2d 119. On remand, the Court reconsidered the record in the light of the opinion of the appellate court and awarded Maddux a substantial sum of money as compensation for his injuries and for mental anguish endured by him on account of his wife's death. There was no appeal from that decision.

On March 8, 1968, counsel for Maddux filed with the Clerk a bill of costs amounting to $1,363.94, including $698.70 appellate costs. Other claims appearing in the cost bill are:

| | |
|---|---|
| Clerk's Fees | $ 5.00 |
| Fees of the Marshal | 13.52 |
| Fees of the Court Reporter for an original and two copies of the trial transcript | 242.50 |
| Statutory witness fees | 16.00 |
| Expenses of photographs | 76.22 |
| Deposition expenses | 312.00 |

The cost bill was served on the United States Attorney, and on March 12 he filed a motion objecting to certain items included in the bill. The Government's objections go to the cost of copies of the trial transcript, all expenses for photographs, and all expenses of depositions, including the cost of copies of depositions to the extent that copies were made. The Government does not object to paying for the original of the trial transcript, or to paying the ordinary fees of court officials and witnesses; and, of course, the Government cannot and does not object here to paying the costs taxed by the Court of Appeals.

The questions presented are rather important ones, and the Court has given them careful consideration.

Between the effective date of the Federal Rules of Civil Procedure in September 1938 and the revision of the Judicial Code of the United States in June 1948 the matter of costs in the federal courts was governed by Rule 54(d) read in connection with 28 U.S.C.A., former edition, section 830, which statute was derived from the Act of February 26, 1853, 10 Stat. 161, 168.

Rule 54(d), insofar as here pertinent, provides that costs are to be allowed as of course to a prevailing party "unless the court otherwise directs." Section 830 of former Title 28 U.S.C.A. provided that:

"The bill of fees of the clerk, marshal and attorney, and the amount paid printers and witnesses, and lawful

fees for exemplifications and copies of papers necessarily obtained for use on trials in cases where by law costs are recoverable in favor of the prevailing party shall be taxed by a judge or clerk of the court, and be included in and form a portion of a judgment or decree against the losing party. Such taxed bills shall be filed with the papers in the cause."

Prior to the adoption of the Rules the federal courts in actions at law had no discretion with respect to awarding costs to a prevailing party. However, in equity cases the federal courts did exercise discretion in the matter of costs. That discretion could operate in two ways; depending on the circumstances of particular cases the federal equity courts could withhold or apportion costs; further, the equity courts had the power of allowing as costs certain items of litigation and pre-litigation expenses not ordinarily thought of as costs proper and sometimes called costs "as between solicitor and client." See Sprague v. Ticonic National Bank, 307 U.S. 161, 59 S.Ct. 777, 83 L.Ed. 1184; Banks v. Chicago Mill & Lumber Co., E.D.Ark., 106 F.Supp. 234; Andresen v. Clear Ridge Aviation, Inc., D.C.Neb., 9 F.R.D. 50.

When procedural differences between law and equity were eliminated by the Rules, the permissive language of Rule 54(d) gave to the district courts in law actions at least the same discretionary power to withhold or apportion costs which they had possessed historically with respect to suits in equity.

When the Judicial Code was revised in 1948, there was included in the revised Code section 1920 which is as follows:

"§ 1920. Taxation of costs.

"A judge or clerk of any court of the United States *may* [1] tax as costs the following:

"(1) Fees of the clerk and marshal;

"(2) Fees of the court reporter for all or any part of the stenographic transcript necessarily obtained for use in the case;

"(3) Fees and disbursements for printing and witnesses;

"(4) Fees for exemplification and copies of papers necessarily obtained for use in the case;

"(5) Docket fees under section 1923 of this title.

"A bill of costs shall be filed in the case and, upon allowance, included in the judgment or decree." (Emphasis added.)

In Banks v. Chicago Mill & Lumber Co., supra, Judge Lemley allowed as costs in an equity suit expenses of taking and transcribing depositions on which the case was submitted and the expenses of preparing certain maps and charts of the area in controversy, which items were necessary to a proper understanding and disposition of the case. In the course of the opinion the Court noted the difference between items of costs which are generally allowed as a matter of course, although not as a matter of right, and which the Court called "statutory costs," and items of expense to be allowed only as a result of the application of judicial discretion.

About a year and a half after *Banks* was decided, Judge Miller of the Western District of Arkansas had before him the question of whether the expenses of certain discovery depositions not used in evidence should be taxed as costs. Farrar v. Farrar, W.D.Ark., 106 F.Supp. 238.[2] Farrar was an action brought

---

[1] The Reviser's Note to § 1920 states that the word "may" was substituted for "shall" before the phrase "tax as costs" so as to conform to the permissive language *appearing in Rule 54(d)*. See Judge Chesnut's comment in that connection in Hansen v. Bradley, D.C.Md., 114 F.Supp. 382, 384.

[2] *Banks* is cited in *Farrar*, and it was when Judge Lemley learned that Judge Miller was citing the Banks case that it was determined to publish the Banks opinion. That is why the cases appear "back to back" in Federal Supplement.

to recover possession of certain securities and probably would be characterized technically as an action at law although it had a number of equitable overtones. Judge Miller was of the apparent view that it made no difference whether the case sounded in law or in equity, and he determined that in the light of the facts and circumstances of the particular case the expenses incurred by defendants in taking the deposition of plaintiff should not be allowed.

More recently, in United States v. 353 Cases Etc. of Mountain Valley Water, W.D.Ark., 195 F.Supp. 685, a suit brought by the Government to condemn certain property under the provisions of the Federal Food, Drug & Cosmetic Act, Judge Miller refused to allow as costs witness fees and mileage payments to a number of Government witnesses whose testimony turned out to be unnecessary as the case was finally developed; he also denied expenses incident to the taking of certain depositions. However, he did tax as costs the full expense of the transcript of the trial, the expenses of some depositions, and the cost of photographing certain exhibits.

The adoption of Rule 54(d) raised a somewhat troublesome question as to whether the Rule extended to suits at law the discretion to tax in exceptional cases costs "as between solicitor and client." Judge Delehant raised that question in Andresen v. Clear Ridge Aviation Corporation, supra, 9 F.R.D. at 53–54, but was not required to answer it because *Andresen* was a conventional suit in equity for an injunction to abate an alleged nuisance.

In 1920 the Supreme Court in Ex parte Peterson, 253 U.S. 300, 40 S.Ct. 543, 64 L.Ed. 919, held that in an exceptional case at law the trial judge in his discretion could direct that certain expenses not normally taxable as costs be incurred and ultimately taxed. In 1961 *Peterson* was followed in Euler v. Waller, 10 Cir., 295 F.2d 765, a personal injury case. The prevailing party had introduced in evidence a map of the accident scene and later sought to have the cost of the map charged against the losing party. The Court refused the requested taxation, stating (p. 767 of 295 F.2d):

"The allowance for the map prepared by the surveyor presents a different problem. No provision is made by the statute for the taxation of any such item as costs. The cases are not in harmony on the question of whether costs may be allowed for such items as models, wall charts, maps, and photographs. In our opinion when costs are sought for items not listed in § 1920 the procedure to be followed is an application to the court in advance of trial for an approving order. This allows the exercise of judicial discretion and at the same time conforms with the holding in Ex parte Peterson * * * which recognized the inclusion in taxable costs of 'expenditures incident to the litigation which were ordered by the court because deemed essential to a proper consideration of the case by the court or the jury.' In the case now before us there was no advance approval. The cost of the map is disallowed."

A contrary result, at least by way of dictum, has been reached by the Court of Appeals for the Fifth Circuit, Harrington v. Texaco, Inc., 5 Cir., 339 F.2d 814. That was a suit for conversion of oil by means of a slanting oil well; prior to the trial the District Court ordered a survey to be made, which was beneficial to all of the litigants, and provided that the cost of the survey should be taxed; subsequently, a formal pre-trial order reserved "the law question of taxability" but fixed the dollar amount of the expense; no objection was ever made as to amount. (339 F.2d at 822.)

The cost of the survey was ultimately taxed as costs by the District Court, and the action of that court was approved by the Court of Appeals. The Court said (p. 822 of 339 F.2d):

"Quite apart from the wide and general discretion in the trial court to assess special costs, one unique factor of this record has been completely ignored in these attacks. The

trial court, with no objection indicated by any party, entered a special order providing for the Sperry-Sun survey. This accorded valuable rights to all, not the least of which was the right of the defendants to have copies of the reports and annexed data. The order further specifically provided that the expense of the survey on being ascertained would be taxed as costs. Later on, the formal pre-trial order \* \* \* which did reserve the law question of taxability, fixed the dollar amount of the expense. No objection has ever been made as to the amount."

The Court then went on to say (Ibid):

"But in any event, we have no doubt as to the acceptability of the taxation of these costs. While it is true that the rule allowing this kind of discovery, F.R.Civ.P. 34, does not mention costs the power of the trial judge to tax as costs the necessary and reasonable expenses incurred in discovery procedures can hardly be doubted. Under F.R.Civ.P. 54(d), the allowance of costs to the prevailing party is within the discretion of the trial judge, and his determination will be sustained unless he lacks the power to tax a particular item or abuses his discretion. 3 Barron & Holtzoff, Federal Practice & Procedure § 1195 (Wright ed. 1958). Reasonable and necessary expenses for depositions as well as the cost of 'preparing models, drawing, charts, photographs and other exhibits may be a taxable expense, \* \* \*' 3 Barron & Holtzoff § 1197. Since the well survey was obviously the most scientific and reliable way to determine the critical issue in this case, and there being no doubt as to its reasonableness or necessity, there can be no question as to the trial Judge's power to assess this item against the defendants as costs."

Incident to its reference to the "power" of a District Court to tax a particular item as costs, the Court cited its earlier decision in United States v. Kolesar, 5 Cir., 313 F.2d 835. That case, like this

one, involved the taxation of costs against the Government in a Tort Claims case; the items involved were expert witness fees and the expense of certain copies of transcripts of depositions. The Court summarily rejected the claim that the expert witness fees were taxable by citing Green v. American Tobacco Co., 5 Cir., 304 F.2d 70, and then went on to consider the question of the copies of the depositions.

In approaching that question the Court found it desirable to settle some preliminary questions. It was said (pp. 837–838 of 313 F.2d):

"\* \* \* First, no real dispute has been raised as to the Government's underlying contention that taxation of particular items of costs in legal (as distinguished from equitable) actions depends upon a statute. We can for our present purposes assume that this is substantially correct. Next, there is the matter of the status of costs incurred for obtaining the *original* of a deposition. This, as is true of the problem under review concerning copies, brings into play § 1920(2) which allows:

"'Fees of the court reporter for all or any part of the stenographic transcript necessarily obtained for use in the case.'

Though § 1920(2) does not specifically mention a deposition, we agree with prior decisions suggesting that depositions are included by implication in the phrase 'stenographic transcript.' The fact that the reporter-stenographer actually taking the deposition is not the official court reporter of that particular Court is of no more consequence as to depositions than it would be as to trial evidence taken by a substitute non-official reporter with consent of the Court. Of course that factor might require special scrutiny as to the basis and reasonableness of the charges rendered."

The Court then proceeded to consider the matter of taxing the cost of the copies of the depositions and concluded

that the matter was discretionary, and that the expense of the copies should have been allowed in that particular case.

The problem was considered in its historical setting by Judge Rodney in Prashker v. Beech Aircraft Corporation, D.C.Del., 24 F.R.D. 305, a wrongful death case in which the prevailing party sought to tax as costs expenses of airplane models, large wall charts, structural reports and analyses, and the record of a radio conversation "with playback expense and copies of certain papers or records held to be unnecessary or undisputed." The materials in question had been procured without any prior order of Court, and the cost amounted to more than $26,000.

The holding of the Court was that the challenged items should be disallowed but not on the basis of lack of power to allow them in certain circumstances. The Court felt that while section 1920 amounts to a prima facie list of what costs should be allowed, and that other costs should be allowed only in exceptional cases and for dominating reasons of justice (citing Sprague v. Ticonic National Bank, supra), nevertheless the Court "has a discretionary power to allow items of costs not mentioned in the statute where such additional costs have been ordered or approved by the Court as entirely essential to the proper consideration and determination of the case." (24 F.R.D. at 312–313.) The Court found that some of the smaller items should be disallowed as unnecessary; with respect to the larger items it was said (p. 313 of 24 F.R.D.):

"The great bulk of the claimed costs * * * aggregating $24,876.26 concerns the preparation of models, wall charts and structural reports and analyses. The defendant contends that these would have been necessary to make the matter clear to the jury. This the plaintiff denies. Models and wall charts have generally been held not taxable as costs as being essentially explanatory and merely as aids to the argument of counsel and explanatory of the testimony of the witnesses, expert or otherwise.

"A few cases have held such costs taxable.

"It is, however, hardly necessary to seek authority beyond this Court. In Gotz v. Universal Products Co., D.C., 3 F.R.D. 153, this Court, by Judge Leahy, held that the costs of charts, unless ordered by the Court, were not assessable as costs. Chief Judge Biggs of the Court of Appeals for the Third Circuit, sitting as a District Judge, expressly adopted this ruling as to models."

Expenses of procuring photographs were allowed in Stachon v. Hoxie, W.D. Mich., 190 F.Supp. 185, and in Hansen v. Bradley, D.C.Md., 114 F.Supp. 382, on the theory that they are "papers" falling within section 1920(4). Professor Moore agrees; and he thinks that a prior order of court is not an indispensable prerequisite to the taxation of the expenses of visual exhibits although he does think it advisable to obtain such an order if contemplated expenditures are large. 6 Moore's Federal Practice, 2d Ed., ¶54.77[6], pp. 1370–71.

The Court certainly agrees with Professor Moore that it is advisable to obtain a prior order if a litigant plans to try to recover substantial litigation expenses as costs if successful in the lawsuit. And, the Court will go further and say that the failure to get such an order may be fatal in certain circumstances to a later claim for a discretionary award of costs. However, the Court does not favor an inflexible prior order rule which might eliminate as cost items all pre-litigation expenses regardless of how reasonable or necessary they may have been.

Assuming that the Court has the power, whether in a law case or in a suit in equity, to tax as additional costs the expense of procuring a particular

item, it is clear that such power should be exercised only in appropriate circumstances and with due regard to the right of the losing party not to be burdened inordinately with costs. While litigants and counsel should be encouraged to prepare and present their cases properly and adequately, Rule 54(d) was not designed and should not be utilized to subsidize extravagance or mere elaborateness in preparation and presentation. As was remarked by the Court in Andresen v. Clear Ridge Aviation, Inc., supra, 9 F.R.D. at 55–56:

"* * * (A certain sound film) represents a refinement in proof and in trial technique of which no criticism is now made or implied. But the court does not feel that the plaintiffs should be compelled to reimburse the defendant for its cost. Industry and ingenuity in the preparation of material for the court's instruction is altogether praiseworthy. It should find its reward, on occasion in the results of litigation. But an unsuccessful plaintiff's cost bill should rarely be made to depend for its amount upon the resourcefulness or energy of the defendant's counsel. The precedent of taxing costs arising out of financial liberality, not to say extravagance, in the preparation of the prevailing party for trial, is dangerous, and may all too easily lead to intolerable abuses. * * *"

■ Turning now to the instant controversy and taking up first the charge for photographs procured by or on behalf of Maddux, it appears that 25 glossy prints of the accident scene and the vehicles were procured at an expense of $76.22. The Court has concluded that that item must be disallowed.

While this case was, in a sense, a difficult case it was not an exceptional case and disposition of it was not aided materially by the photographs in question, including those introduced in evidence. The case was tried to the Court, and the Court was familiar with the scene of the accident. The wreck occurred on a perfectly straight level stretch of road; there was no intersections in the vicinity and no vehicles were involved other than the Government truck and the Maddux car. The Maddux car was struck from the rear, and the driver of the Government truck did not see it until a split second before the impact. The most difficult question in the case was what Rev. Maddux had been doing immediately prior to the collision and the photographs were simply not instructive with respect to that question.

■ As indicated, claim is made for the original (ribbon copy) and two (carbon) copies of the transcript of the proceedings at the trial including the testimony. That transcript was ordered for purposes of appeal. The original of the transcript was necessary for appellate purposes, but the carbons were not since the case was submitted to the Court of Appeals on a printed record. The cost of printing was taxed against the Government at the appellate level. The cost of the copies of the transcript will not be allowed.

For the guidance of counsel the Court will point out that when a litigant in this Court desires to appeal to the Court of Appeals in an ordinary civil case and needs a transcript of the evidence, he is required to order the ribbon copy only. That copy is prepared by the official reporter of this Court who makes a charge therefor set by rule of the Court approved by the Judicial Conference of the United States. Under the Court Reporters Act, 28 U.S.C.A., § 753, the reporter is required to prepare one carbon copy of the transcript without charge and to file it with the Clerk of this Court as part of the records of the Court. The ribbon copy is delivered to the party who orders it, and it is used for preparation of the printed record on appeal. The carbon copy is available for inspection in the Clerk's office during business hours; it may not be removed from that office. Of course, counsel may order as many copies of the transcript as they may choose, but this Court does not feel

that a prevailing party should be entitled to recoup as costs the expense of an unnecessary copy or unnecessary copies of the trial transcript.

Four depositions are in controversy here. One of those depositions, that of Dr. Louis Adametz, Maddux's physician, was taken for trial purposes and was introduced in evidence. The other depositions were discovery depositions of Melton and Cox, who were parties to the suit, and that of a State Police officer who participated in the investigation of the accident. The charges made for the depositions, including copies thereof obtained by counsel for Maddux, are quite substantial.

■ Expenses incident to the taking of depositions under the Federal Rules of Civil Procedure are taxable as costs where the depositions are actually used in evidence, although the taxation may be disallowed by the trial court in the exercise of its discretion. United States v. Kolesar, supra; W. F. & John Barnes Co. v. International Harvester Co., 7 Cir., 145 F.2d 915; Harris v. Twentieth Century-Fox Film Corp., 2 Cir., 139 F.2d 571; United States v. 353 Cases Etc. of Mountain Valley Water, supra; Banks v. Chicago Mill & Lumber Co., supra. And the expense of depositions not used in evidence may be taxed in proper cases. Harrison Sheet Steel Co. v. Morgan, 8 Cir., 268 F.2d 538; Farrar v. Farrar, supra; 6 Moore, op. cit. ¶54.77[4], pp. 1359–1360. The same rule is applicable to copies of depositions purchased by counsel where the purchase was "necessary" rather than merely "convenient." United States v. Kolesar, supra; cf. Perlman v. Feldman, D.C.Conn., 116 F.Supp. 102.

While the discovery deposition is a valuable pre-trial tool the wide employment of which is encouraged by the Federal Rules, 6 Moore, op. cit., p. 1359 and cases there cited, it occurs to the Court that a too liberal judicial attitude toward taxing deposition expenses as costs can lead to grave abuses. As far as discovery depositions are concerned the Court is inclined to take a conservative view, and to take an even more conservative one as far as copies of any depositions are concerned, particularly where the prevailing party took the depositions in question in the first instance and is seeking to recover the expense of not only the original depositions but also the cost of one or more copies.

■ This Court in the exercise of its own discretion is simply not inclined to permit a prevailing party to recover the expense of the discovery deposition of an opposing party in the absence of some showing that there was a real necessity for the taking of the deposition as opposed to the obtaining of necessary information in an informal manner. There are circumstances, of course, in which the allowance of that expense may be proper. For example, if the opposing party is not likely to be available at the trial, or if he refuses to talk about the case or to give a written statement, or if he is evasive, or if he has given conflicting versions of the occurrence in question, or if he is a person of bad reputation or one who may be expected to say one thing before the trial and something else at the trial, it may appear that the taking of a formal deposition in advance of trial was necessary to his opponent, rather than merely prudent or convenient. In such circumstances the expense of at least the original of the discovery deposition may be allowed, but the allowance should be the exception and not the rule.

■ Applying the principles above stated to the depositions involved here, the expense of the deposition of Dr. Adametz will be allowed together with the expense of the originals of the depositions of Melton and Cox. All other deposition expenses will be disallowed.

The Oldham disposition requires no extended comment. The taking of it was a prudent pre-trial step on the part of counsel for Maddux, but the Court does not consider that it was so necessary as to render proper the taxing of the expense of that deposition.

█ As to the depositions of Melton and Cox, the Court will point out that as a result of his injuries Rev. Maddux suffered retrograde amnesia and has never recalled anything about the accident or about the events immediately preceding it. The only witnesses to the accident who could testify about it were Melton and Cox. It was vital for counsel for Maddux to obtain their version of the accident prior to trial. While the Court has no reason to believe that truthful information could not have been obtained from them without the taking of their depositions, there is one factor here which is not usually present in cases of this kind. Both Melton and Cox were career personnel in the armed forces of the United States at a time of national conflict; they were subject to being transferred to other posts of duty, perhaps beyond the continental limits of the United States, at any time, and their transfers might have been permanent or of indefinite duration; had they been so transferred, the case could not have been tried in their absence unless their depositions for use at trial were obtained. Following a transfer, it would have been more difficult and expensive to take their depositions, if, indeed, satisfactory depositions could have been obtained; one or both of them might have died or the memory of one or both of them might have faded with the passage of time. In the circumstances the Court thinks that it was "necessary" for their discovery depositions to be taken, and that the expense of the originals of the depositions should be taxed as costs.

An order in accordance with the foregoing will be entered.