**INTERNATIONAL WOODWORKERS OF AMERICA, AFL–CIO AND ITS LOCAL NO. 5–376, Plaintiff-Appellee,**

v.

**CHAMPION INTERNATIONAL CORPORATION, Defendant-Appellant.**

No. 83–4616.

United States Court of Appeals, Fifth Circuit.

June 2, 1986.

Jeffrey A. Walker, Fuselier, Ott & McKee, M. Curtiss McKee, Jackson, Miss., for defendant-appellant.

Michael B. Trister, Richard B. Sobol, Washington, D.C., for amicus curiae, The Pay Discrimination Institute.

Steven L. Winter, New York City, for amicus-N.A.A.C.P.

James E. Youngdahl, Youngdahl, Larrison & Agee, Little Rock, Ark., for plaintiff-appellee.

Before CLARK, Chief Judge, and WISDOM, GEE, RUBIN, REAVLEY, POLITZ, RANDALL, JOHNSON, WILLIAMS, GARWOOD, JOLLY, HIGGINBOTHAM, DAVIS, HILL and JONES, Circuit Judges.[*]

RANDALL, Circuit Judge:

Section 1920 of Title 28 allows the fees of witnesses to be taxed as costs in federal court, while section 1821 of the same title establishes the amount that may be so taxed. The case before us today asks whether—and if so, when—federal courts in non-diversity cases may tax as costs the fees of non-court-appointed expert witnesses in excess of the amount set forth in 28 U.S.C. § 1821. We hold that the fees of non-court-appointed expert witnesses are taxable only in the amount specified by § 1821, except that fees in excess of that amount may be taxed when expressly authorized by Congress, or when one of three narrow equitable exceptions to the American Rule applies. Our holding overrules those portions of *Jones v. Diamond,* 636 F.2d 1364 (5th Cir.) (en banc), *cert. dismissed,* 453 U.S. 950, 102 S.Ct. 27, 69 L.Ed.2d 1033 (1981); *Copper Liquor Inc. v. Adolph Coors Co.,* 684 F.2d 1087 (5th Cir. 1982) *(Copper Liquor III), modified on other grounds en banc,* 701 F.2d 542 (5th

---

[*] Due to his death on March 27, 1986, Judge Albert Tate, Jr. did not participate in this decision.

Cir.1983), and their progeny approving the taxing of excess expert witness' fees as costs under standards different from that here announced.

## I.

International Woodworkers of America, AFL–CIO, CLC ("IWA") and one of its local unions sued Champion International Corporation ("Champion") alleging racial discrimination in employment in violation of Title VII and 42 U.S.C. § 1981. After a trial, the district court entered judgment on the merits dismissing the claims of all plaintiffs and assessing costs against IWA. We affirmed the district court's judgment on the merits.

After denying Champion's motion for attorneys' fees, the district judge referred all other cost questions to a magistrate. The magistrate awarded Champion $14,750.87 in costs, of which $11,807.16 were for a portion of the services of an expert witness employed by Champion for the statistical aspects of the case. IWA objected to certain parts of the award, particularly to the taxing of the expert witness' fees in an amount exceeding that provided for by § 1821, and the case returned to the district judge.

The district judge sustained IWA's objections to the taxing of the excess expert witness' fees, concluding that this court in *Jones v. Diamond* had adopted for the purpose of defendants' excess expert witness' fees the *Christiansburg* standard set forth by the Supreme Court governing attorneys' fees.[1] Because IWA's suit did not meet that standard, the district court refused to grant Champion expert witness' fees in excess of the amount provided by § 1821.

On appeal, a panel of this court affirmed, 752 F.2d 163 (5th Cir.1985), rejecting Champion's argument that *Copper Liquor III* authorized excess expert witness' fees to a prevailing defendant if the "expert testimony was necessary or helpful to the presen-

tation of civil rights claims, or indispensable to the determination of the case." The district court's finding that IWA-Champion litigation failed to meet the *Christiansburg* standard remained unchallenged on appeal; the panel thus declined to reach the applicability of that standard. This court voted to rehear the case en banc, thereby vacating the panel opinion. *See* Fifth Circuit Local Rule 41.3.

## II.

In the United States, contrary to the English practice, a rule of limited recovery of the expenses of litigation has developed to discourage costly litigation and guarantee access to the courts. *See, e.g., Fleischmann Distilling Corp. v. Maier Brewing Co.*, 386 U.S. 714, 718, 87 S.Ct. 1404, 1407, 18 L.Ed.2d 475 (1967). The "American Rule" draws a distinction between expenditures incurred by order of the court to facilitate consideration of the case, and expenditures incurred merely to aid one party in the presentation of his side. *See Ex Parte Peterson*, 253 U.S. 300, 316, 40 S.Ct. 543, 548, 64 L.Ed. 919 (1920). The former, in times past referred to as costs "between party and party," and now known as taxable costs, are recoverable by the prevailing party under the American Rule; the latter, denominated costs "as between solicitor and client" and including such items as attorneys' fees and "other expenses entailed by the litigation not included in the ordinary taxable costs recognized by statute," *see Sprague v. Ticonic National Bank*, 307 U.S. 161, 164, 59 S.Ct. 777, 778, 83 L.Ed. 1184 (1939), such as expert witness' fees in excess of the amount provided for by statute, are generally borne by the litigants.

Before the merger of law and equity, courts at law awarded to the prevailing party costs "between party and party" as a matter of course. Courts sitting in equity had discretion to award such costs, or a portion thereof, as justice might demand.

---

1. In *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 98 S.Ct. 694, 54 L.Ed.2d 648 (1978), the Supreme Court held that prevailing civil rights defendants are entitled to attorneys' fees only when the lawsuit is frivolous, unreasonable, or without foundation.

Federal courts sitting in equity also had limited discretion to award costs "as between solicitor and client" in certain exceptional cases. These exceptions to the American Rule were nearly identical to those recognized by the English High Court of Chancery: the "foundation for the historic practice of granting reimbursement for the costs of litigation other than the conventional taxable costs is part of the original authority of the chancellor to do equity in a particular situation." *Sprague*, 307 U.S. at 166, 59 S.Ct. at 780. The exceptions were limited to cases involving preservation of a common fund, vexatious or oppressive prosecution of a claim or maintenance of a defense, *Hall v. Cole*, 412 U.S. 1, 5–6, 93 S.Ct. 1943, 1946–47, 36 L.Ed.2d 702 (1972), or wilful disobedience of a court order. *Toledo Scale Co. v. Computing Scale Co.*, 261 U.S. 399, 426–28, 43 S.Ct. 458, 465–66, 67 L.Ed. 719 (1923). Absent statute or equitable exception, however, under the American Rule litigants paid their own costs "as between solicitor and client."

In *Alyeska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240, 247, 95 S.Ct. 1612, 1616, 44 L.Ed.2d 141 (1975), the Supreme Court decided against fashioning a far-reaching exception to the American Rule for attorneys' fees, determining instead that it would be "inappropriate for the judiciary, without legislative guidance, to reallocate the burdens of litigation...." The Court reasoned that 28 U.S.C. § 1920(5) and § 1923 controlled the amount that might be awarded as attorneys' fees. The Court examined the congressional intent behind the statutory predecessor of

§ 1920 and § 1923: the Fee Bill of 1853. In enacting the 1853 Act, Congress undertook to standardize and limit the costs allowable in federal litigation. *Alyeska*, 421 U.S. at 251–52, 95 S.Ct. at 1618–19. The 1853 Act did not permit courts to "tax against the losing party 'solicitor and client' costs in excess of the amounts prescribed" therein. *Id.* at 258 n. 30, 95 S.Ct. at 1621 n. 30. True to the American Rule, the Court concluded that "absent statute or enforceable contract, litigants pay their own attorneys' fees." *Id.* at 257, 95 S.Ct. at 1621. Despite its decision not to carve a broad exception to the American Rule, the Court nevertheless recognized the three judicially fashioned equitable exceptions which, as the Court noted, have not been repudiated by Congress. *Id.* at 260, 95 S.Ct. at 1623. A federal court might award reasonable attorneys' fees to the prevailing party in excess of the small sums permitted by § 1923 when: (1) the trustee of a fund or property, or a party in interest, preserved or recovered the fund for the benefit of others in addition to himself; (2) a party acted in wilful disobedience of a court order; or (3) the losing party had acted in bad faith, vexatiously, wantonly, or for oppressive reasons.[2]

The American Rule of limited recovery, although most often discussed in the context of attorneys' fees, is equally applicable in the context of excess expert witness' fees. Like the statutory provisions before the *Alyeska* Court, those before us today find their origins in the Fee Bill of 1853. Section 1920 states that the court may tax as "costs" the fees of witnesses.[3] Section

2. The last exception is consistent with our decision in *Kinnear-Weed Corp. v. Humble Oil & Refining Co.*, 441 F.2d 631 (5th Cir.), cert. denied, 404 U.S. 941, 92 S.Ct. 285, 30 L.Ed.2d 255 (1971), in which we held that attorneys' fees and excess expert witness' fees were taxable against a party acting in bad faith.

The Supreme Court has recently reaffirmed the limited nature of the exceptions to the American Rule, noting that most of the exceptions to the rule are statutory. *Marek v. Chesney*, —— U.S. ——, ——, 105 S.Ct. 3012, 3016, 87 L.Ed.2d 1 (1985). *See also Webb v. Board of Education of Dyer County*, —— U.S. ——, —— n.

1, 105 S.Ct. 1923, 1930 n. 1, 85 L.Ed.2d 233 (1985) (Brennan, J., dissenting) (referring to the exceptions as "several narrow exceptions").

3. Section 1920 provides:
A judge or clerk of any court of the United States may tax as costs the following:
(1) Fees of the clerk and marshal;
(2) Fees of the court reporter for all or any part of the stenographic transcript necessarily obtained for use in the case;
(3) Fees and disbursements for printing and witnesses;

1821 establishes the maximum amount that may be allowed for witnesses' attendance fees.[4] These sections represent Congress' treatment of the taxing of witness fees as costs. Courts cannot, in the absence of other explicit statutory authority or one of the three limited equitable exceptions recognized in *Alyeska*, tax as costs expert witness' fees in excess of the amount set forth in § 1821. Moreover, because the taxing of witness' fees as costs has been expressly provided for by federal statute, federal courts cannot tax excess fees as costs under Fed.R.Civ.P. 54(d), which provides for court discretion to tax costs *"[e]xcept* where express provision therefor is made either in a statute of the United States or in these rules" (emphasis added).[5]

Our ruling is commanded by the Supreme Court's holding in *Henkel v. Chicago, St. P., M. and O. Rwy.*, 284 U.S. 444, 52 S.Ct. 223, 76 L.Ed. 386 (1932). Citing a statutory predecessor to § 1920 and § 1821, the Court found that because federal law made express provision for the amount payable and taxable as witness' fees, "additional amounts paid as compensation, or fees, to expert witnesses cannot be allowed or taxed as costs in cases in the federal courts." *Id.* at 446, 52 S.Ct. at 225. The Court further observed that "Congress

has dealt with the subject [of witness' fees] comprehensively and has made no exception of the fees of expert witnesses." *Id.* at 447, 52 S.Ct. at 225. Although *Henkel* was a case decided "at law," the subsequent merger of law and equity effected by the adoption of the Federal Rules of Civil Procedure does not alter the result in *Henkel* in view of the specific language in Fed.R.Civ.P. 54(d) dealing with costs which are covered by express federal statutes.

The Court's reasoning in *Alyeska* in the analogous area of attorneys' fees further compels our conclusion that expert witness' fees are generally not recoverable beyond the amount specified by statute. As noted above, like the provisions before the *Alyeska* court, those before us today are statutory heirs of the Fee Bill of 1853. The congressional intent found relevant by the Supreme Court in *Alyeska* also governs here. The 1853 Act "specif[ied] in detail the nature and amount of the taxable items of costs in the federal courts." *Alyeska*, 421 U.S. at 252, 95 S.Ct. at 1619. The Act did not permit the taxing of excess "solicitor and client" costs. *Id.* at 258 n. 30, 95 S.Ct. at 1621 n. 30. Congress has not since "retracted, repealed or modified the limitations on taxable fees contained in the 1853

---

(4) Fees for exemplification and copies of papers necessarily obtained for use in the case;

(5) Docket fees under section 1923 of this title;

(6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.

A bill of costs shall be filed in the case and, upon allowance, included in the judgment or decree.

**4.** Section 1821 provides in relevant part:

(b) A witness shall be paid an attendance fee of $30 per day for each day's attendance. A witness shall also be paid the attendance fee for the time necessarily occupied in going to and returning from the place of attendance at the beginning and end of such attendance or at any time during such attendance.

This section draws no distinction between ordinary and expert witnesses, and it—or, more precisely, its statutory predecessor—has been held to apply to both categories of witnesses alike. *See Henkel v. Chicago, St. P., M. and O.*

*Rwy.*, 284 U.S. 444, 52 S.Ct. 223, 76 L.Ed. 386 (1932).

**5.** Federal Rule of Civil Procedure 54(d) provides in pertinent part: "Except when express provision therefor is made either in a statute of the United States or in these rules, costs shall be allowed as of course to the prevailing party unless the court otherwise directs...." The Rule embodies the notion applicable to all civil actions after the merger of law and equity that, except as otherwise expressly provided by statute or rule, costs should be allowed as of course to the prevailing party. A federal court in its discretion could direct that certain costs, otherwise allowed as a matter of course, not be allowed.

That Rule 54(d) cannot be used to circumvent the limits on costs set forth in § 1920 and § 1821 was recognized by the drafters of the Rule. The Advisory Committee's Notes to Rule 54(d) emphasized that the terms of the statutory predecessor of § 1920 remained "unaffected by the rule."

statute and its successors." *Id.* at 260, 95 S.Ct. at 1623. Just as Congress in the Fee Bill of 1853 extended no "roving authority to the Judiciary to allow counsel fees as costs or otherwise whenever the courts might deem them warranted," *id.*, so too Congress extended no "roving authority"

to allow expert witness' fees in excess of the amount specifically provided for by statute.[6]

Further, numerous statutes expressly allow federal courts to award the full amount of expert witness' fees as costs of litigation.[7] Given Congress' ability to pro-

6. Section 1920(6) allows the court to tax as costs the compensation of court-appointed experts. Our holding today recognizes that § 1920(6) acts in effect as a safety-valve, permitting the full compensation of court-appointed expert witnesses to be taxed as costs after notice and an opportunity to object to their appointment by the court.

7. At least twenty-eight statutes provide for the taxing of expert witness' fees as costs in civil actions, albeit under varying standards: (1) Consumer Product Safety Act, 15 U.S.C. §§ 2060(c) (action for review of consumer product safety rule), 2072(a) (action by person injured by one in knowing violation of consumer product safety rule), 2073 (action for enforcement of consumer product safety rule); (2) Toxic Substances Control Act, 15 U.S.C. §§ 2618(d) (action for review of rule regulating toxic substances), 2619(c)(2) (citizen's action to compel compliance with regulations controlling toxic substances), 2620(b)(4)(C) (action to compel initiation of rulemaking proceeding regarding toxic substance); (3) Petroleum Marketing Practices Act, 15 U.S.C. § 2805(d)(3) (action to enforce provisions governing franchise relationship in petroleum marketing practice); (4) National Historic Preservation Act Amendments of 1980, 16 U.S.C. § 470w–4 (action for enforcement of provisions regarding national historic preservation); (5) Endangered Species Act of 1973, 16 U.S.C. § 1540(g)(4) (citizen's action to compel compliance with provisions concerning endangered species); (6) Public Utility Regulatory Policies Act of 1978, 16 U.S.C. § 2632(a)(1) (proceeding involving electric utility); (7) Tax Equity and Fiscal Responsibility Act of 1982, 26 U.S.C. § 7430(a), (c)(1)(A)(ii) (action brought by or against United States in connection with determination, collection, or refund of any tax, interest, or penalty under Internal Revenue Code); (8) Equal Access to Justice Act, 28 U.S.C. § 2412(d)(2)(A) (as amended by Pub.L. 99–80, 99 Stat. 184, 186) (any non-tort civil action brought by or against United States); (9) Surface Mining Control and Reclamation Act of 1977, 30 U.S.C. § 1270(d) (civil action to compel compliance with provisions governing surface mining and reclamation); (10) Deep Seabed Hard Mineral Resources Act, 30 U.S.C. § 1427(c) (civil action for equitable relief against person in violation of provisions regulating exploration and commercial recovery by U.S. citizens of deep seabed hard mineral resources); (11) Federal Oil and Gas Royalty Management Act of 1982, 30 U.S.C. § 1734(a)(4) (state action to recover royalty, interest, or civil penalty with respect to any oil and gas lease on federal lands located within the state); (12) Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C. § 928(d) (action for recovery of compensation under LHWCA); (13) Federal Water Pollution Control Act, 33 U.S.C. § 1365(d) (citizen's action against person in violation of water pollution prevention and control provisions); (14) Marine Protection, Research, and Sanctuaries Act of 1972, 33 U.S.C. § 1415(g)(4) (citizen's suit against person in violation of ocean dumping standards); (15) Deepwater Ports Act of 1974, 33 U.S.C. § 1515(d) (citizen's action against persons in violation of deepwater port provisions); (16) Act to Prevent Pollution from Ships, 33 U.S.C. § 1910(d) (actions authorized by provisions governing prevention of pollution from ships); (17) Safe Drinking Water Act, 42 U.S.C. § 300j–8(d) (action to compel compliance with provisions concerning the safety of public water systems); (18) Noise Control Act of 1972, 42 U.S.C. § 4911(d) (citizen's suit to compel compliance with noise control provisions); (19) Energy Reorganization Act of 1974, 42 U.S.C. § 5851(e)(2) (action for protection of employee of the NRC, an NRC licensee, an applicant for an NRC license, or a contractor or subcontractor of an NRC licensee or applicant); (20) Energy Policy and Conservation Act, 42 U.S.C. § 6305(d) (citizen's action to compel compliance with provisions concerning the energy conservation program for consumer products other than automobiles); (21) Resource Conservation and Recovery Act of 1976, 42 U.S.C. § 6972(e) (citizen's action to compel compliance with provisions regarding solid waste disposal); (22) Clean Air Act, 42 U.S.C. §§ 7413(b) (action brought by EPA administrator against owner or operator of major stationary source of air pollution in violation of provisions concerning air pollution prevention), 7604(d) (citizen's suit to require compliance with provisions concerning air pollution prevention), 7607(f) (action for review of rules promulgated by EPA administrator concerning air pollution prevention); (23) Clean Air Act Amendments of 1977, 42 U.S.C. § 7622(b)(2)(B), (e)(2) (action for protection of employee assisting in proceeding enforcing provisions on air pollution prevention); (24) Powerplant and Industrial Fuel Use Act of 1978, 42 U.S.C. § 8435(d) (citizen's suit to compel compliance with provisions governing power plant and industrial fuel use); (25) Ocean Thermal Energy Conversion

vide explicitly for the taxing of excess expert witness' fees as costs, we should not infer congressional intent to award such costs in the absence of an express statute so providing. Moreover, a statute which provides only for an award of "costs" or "attorneys' fees" but which fails to address expert witness' fees will not be construed to authorize the taxing of expert witness' fees in excess of the § 1821 amount.

The Supreme Court's holding in *Farmer v. Arabian American Oil Co.*, 379 U.S. 227, 85 S.Ct. 411, 13 L.Ed.2d 248 (1964), does not command a rule different from that today announced. *Farmer* presented the Supreme Court with the question whether, in view of Rule 45(e)'s command that witnesses cannot be compelled to travel more than 100 miles, a party who procured their voluntary attendance by paying the witnesses' transportation expenses could have those expenses taxed as costs against a defeated adversary. The Supreme Court held that the trial court did not abuse its discretion under Rule 54(d) in refusing to tax certain items as costs. In dicta, the court explained: "the discretion given district judges to tax costs should be sparingly exercised with reference to expenses *not specifically allowed by statute*." *Farmer*, 379 U.S. at 235, 85 S.Ct. at 416 (emphasis added). Whatever import this quoted language carries for the assessment of expenses *not specifically allowed by statute*, it is not relevant here, for expert witness' fees have been comprehensively dealt with by Congress in § 1920 and § 1821. In addition, the Court in *Farmer* upheld the exercise of the district court's discretion under Rule 54(d) to *refrain* from

taxing certain expenses as costs; to rely on *Farmer* to justify the affirmative taxing of witness' costs in excess of the § 1821 amount would turn *Farmer* on its head.

We overrule those portions of our prior opinions suggesting standards for the taxing of excess expert witness' fees different from that now adopted. In *Jones v. Diamond*, we acknowledged that expert witness' fees were generally recoverable only in the amount prescribed by § 1821, but determined nevertheless that "Congress had manifested an intention that a different rule be applied for civil rights plaintiffs." 636 F.2d at 1382. District courts had "in many instances" awarded "the full fees of experts on the ground that their testimony and assistance were necessary or helpful in representing clients in civil rights litigation." *Id.* As noted by the *Jones* dissent, however, the majority cited no act of Congress to support its decision, but relied only on a single sentence from "a Senate Report concerning legislation which could have contained ... a provision [authorizing the award of excess expert witness' fees as costs] but *did not.*" *Id.* at 1391 (Coleman, C.J., dissenting) (emphasis in original). The single cited sentence in the Senate Report does not authorize the taxing of excess expert witness' fees as costs, and the *Jones* holding on excess expert witness' fees cannot stand in light of the rule announced today.

In *Copper Liquor III*, an antitrust case, we indicated in a part of the opinion entitled "Section 1920 Costs" that trial courts had discretion to award excess expert witness' fees in "exceptional circumstances,

Act of 1980, 42 U.S.C. § 9124(d) (citizen's action to compel compliance with provisions regarding ocean thermal energy conversion); (26) Outer Continental Shelf Lands Act Amendments of 1978, 43 U.S.C. § 1349(a)(5) (action to compel compliance with provisions governing Outer Continental Shelf leasing program); (27) Natural Gas Pipeline Safety Act, 49 U.S.C. § 1686(e) (citizen's action against persons in violation of provisions concerning natural gas pipeline safety); (28) Hazardous Liquid Pipeline Safety Act of 1979, 49 U.S.C. § 2014(e) (citizen's action against persons in violation of provisions concerning hazardous liquid pipeline safety).

Further, at least three other statutes expressly provide for the taxing of expert witness' fees as costs in administrative proceedings: (1) Federal Trade Commission Improvement Act, 15 U.S.C. § 57a(h)(1) (participation in rulemaking proceedings of Federal Trade Commission regarding unfair or deceptive acts or practices); (2) Toxic Substances Control Act, 15 U.S.C. § 2605(c)(4)(A) (participation in rulemaking proceeding regarding hazardous chemical substances and mixtures); (3) Public Utility Regulatory Policies Act of 1978, 16 U.S.C. § 825q–1(b)(2) (proceedings before Office of Public Participation).

for example, when the expert testimony was necessary or helpful to the presentation of. civil rights claims, or indispensable to the determination of the case." 684 F.2d at 1100 (footnotes omitted). This conclusion that § 1920 authorizes the award of excess expert witness' costs in "exceptional circumstances" is overruled.[8]

### III.

Given the principles set out in Part II of this opinion, we now affirm, albeit on different grounds, the district court's denial of expert witness' fees in excess of the amount provided for in 28 U.S.C. § 1821. The statutes applicable here, 42 U.S.C. § 1988 and § 2000e–5(k), provide for the award of attorneys' fees to prevailing parties, but make no mention of excess expert witness' fees. None of the equitable exceptions to the American Rule is here claimed. Champion thus must content itself with the amount recoverable for expert witnesses under § 1821.

### IV.

We hold that the fees of non-court-appointed expert witnesses are taxable by federal courts in non-diversity cases only in the amount specified by § 1821, except that fees in excess of that amount may be taxed when expressly authorized by Congress, or when one of the three narrow equitable exceptions recognized by *Alyeska* applies. We direct the district courts in the exercise of our supervisory power to apply the rule announced today to all pending cases.

For the above reasons, the judgment of the district court is AFFIRMED.

---

**8.** We also overrule that portion of *Berry v. McLemore*, 670 F.2d 30, 34 (5th Cir.1982), in which we relied on *Jones* to find an abuse of discretion in the district court's failure to assess as an item of costs the full fee of an expert witness who was "important" to the plaintiff's § 1983 case. Our holding on excess expert witness' fees in *Greenhaw v. Lubbock County Beverage Ass'n*, 721 F.2d 1019, 1033 (5th Cir.1983), also cannot stand in light of the rule adopted above.

ALVIN B. RUBIN, Circuit Judge, concurring in the result in *International Woodworkers of America v. Champion International Corp.*, and dissenting in *J.T. Gibbons, Inc. v. Crawford Fitting Co., et al.***

The majority opinion today fashions a rule that has not been adopted by any other circuit. It applies that rule to the recovery of expert witness fees without considering the recoverability of other litigation expenses. And it applies that rule without distinction to two dissimilar cases in which the recovery of expert witness fees is sought on completely different bases. In *Woodworkers*, a defendant who was the prevailing party in an employment discrimination suit requests expert witness fees as a litigation expense incidental to an award of attorney's fees authorized by The Civil Rights Attorney's Fees Awards Act of 1976, 42 U.S.C. § 1988. In *Gibbons*, the defendant who prevailed in an antitrust suit invokes the court's discretion under Federal Rule of Civil Procedure 54(d) to recover costs, including the fees of expert witnesses for courtroom testimony.

Each of these cases involves a different question. When a statute authorizes an award of attorney's fees to the prevailing party in addition to costs, as in *Woodworkers*, that party should not be denied the right to recover all those expenses for which an attorney would normally bill his client. There is no reason to distinguish, in this respect, between expert witness fees and the myriad other costs incident to litigation that are incurred by a lawyer and billed to his client. While the majority deals expressly only with expert witness fees, the effect of its rationale must inevitably extend to a denial of all other costs of litigation, save reimbursement for the per-

---

** Judges Wisdom, Johnson, and Williams join in Judge Rubin's opinion concurring in the result in *International Woodworkers of America v. Champion International Corp.*, and Judges Goldberg, Johnson, and Williams join in his dissent in No. 84–3332—*J.T. Gibbons, Inc. v. Crawford Fitting Company, et al.*

sonal services of the lawyer and for those limited costs specified in 28 U.S.C. § 1920.

If, like the victor in *Gibbons*, the prevailing party does not have a statutory right to recover attorney's fees, he may not recover either his lawyer's fees or his lawyer's expenses, but he may request that the district court exercise its discretion under Rule 54(d) to award the costs of litigation, including the fees paid to experts for testifying in court.

Neither the court's general discretion to tax costs, nor its determination of which expenses to include in a statutorily authorized award of attorney's fees is, or should be, governed by the standards that define the court's equitable powers to award attorney's fees, as summarized in *Alyeska Pipeline Service Co. v. Wilderness Society*.[1] The application of a single rule to both kinds of cases obliterates the important differences between them and risks overriding Congress' intent in authorizing civil rights attorney's fees.

The majority's rule produces illogical results: Absent a fee-shifting statute, expert witness fees may be recovered when (and only when) attorney's fees would be permitted under the *Alyeska* rule. If, however, Congress has enacted a statute explicitly authorizing the award of attorney's fees in an effort to shift the burden of litigation expenses from the prevailing party to the wrongdoer, expert witness fees are not recoverable even though attorney's fees are.

## I.

Both cases before us are affected, although not resolved, by the statutes that govern the taxation of costs in federal courts. 28 U.S.C. § 1920, set forth in full in the footnote,[2] lists certain costs that courts are permitted to tax. Its language is neither mandatory nor exclusive. It permits the taxing of fees for court-appointed expert witnesses, and the taxing of limited costs for ordinary witnesses, set by 28 U.S.C. § 1821 at thirty dollars per day plus a travel allowance. Section 1920 does not mention fees for expert witnesses except for those appointed by the court. The significance of this omission for the two cases before us depends on a careful review of the questions they present.

The prevailing defendant in *Woodworkers* seeks to recover both attorney's fees and expert witness fees under The Civil Rights Attorney's Fees Awards Act of 1976, 42 U.S.C. § 1988.[3] That statute authorizes the court, "in its discretion," to "allow the prevailing party ... a reasonable attorney's fee as part of the costs." *Woodworkers*, therefore, poses a question of statutory interpretation: Did Congress, in enacting § 1988, intend to allow a prevailing party compensation only for fees actually paid to the lawyer himself for legal services rendered, in addition to the routinely recoverable costs listed in § 1920, or did it also intend to allow recovery of the attorney's expenses and other necessary and reasonable costs of litigation?

*Gibbons*, however, poses a different question. That suit was brought under the Clayton Act, which permits the award of costs and attorney's fees only to a prevailing plaintiff.[4] A victorious defendant may recover costs only by invoking the court's

---

1. 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975).

2. 28 U.S.C. § 1920 provides:
A judge or clerk of any court of the United States may tax as costs the following:
(1) Fees of the clerk and marshal;
(2) Fees of the court reporter for all or any part of the stenographic transcript necessarily obtained for use in the case;
(3) Fees and disbursements for printing and witnesses;
(4) Fees for exemplification and copies of papers necessarily obtained for use in the case;

(5) Docket fees under section 1923 of this title;
(6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.
A bill of costs shall be filed in the case and, upon allowance, included in the judgment or decree.

3. 42 U.S.C. § 1988 (1982).

4. 15 U.S.C. § 15 (1982).

general discretion under Federal Rule of Civil Procedure 54(d). The question presented, therefore, is whether the court's discretion permits the award of expert witness fees, and if so, whether the court abused its discretion in this case.

## II.

Section 1988 should be interpreted, I submit, to include within the phrase "attorney's fees as part of the costs" not only fees for a lawyer's services and those costs specified in § 1920, but all of the reasonable expenses of litigation that a privately retained lawyer would usually bill to his client.[5] The Act's legislative history makes clear that an attorney who recovers his fee under § 1988 should receive neither more nor less than an attorney who is paid by his client. This means that office overhead and secretarial expense, normally paid by the attorney out of his fee, whether fixed at a stated amount, or calculated hourly or on some other basis, should not be awarded separately. However, the court should award other reasonable and necessary costs that an attorney incurs and normally bills separately to the client, such as travel costs, long-distance telephone bills, fees paid to consultants, the costs of preparing exhibits, and any other of the multitudinous expenses of litigation.

Expert witness fees are not so singular as to be treated differently from all other litigation expenses. A court's authority to award these expenses comes neither from the equitable powers described in *Alyeska Pipeline Service Co. v. Wilderness Socie-*

ty,[6] nor from the courts' limited authority under § 1920, nor from its general discretion pursuant to Rule 54(d), but from The Civil Rights Attorney's Fees Awards Act itself, and from Congress' unequivocal statement of the Act's purpose.

Although the statute explicitly refers only to the award of attorney's fees, Congress made clear that attorneys were to be paid "as is traditional with attorneys compensated by a fee-paying client."[7] As the Act's sponsor, Representative Drinan, stated during the House debate, "I should add that *the phrase 'attorney's fee' would include ... all incidental and necessary expenses incurred in furnishing effective and competent representation.*"[8] These remarks are consistent with the frequent observation that private enforcement of the civil rights laws depend on the citizens' "opportunity to recover what it costs them to vindicate these rights in court."[9] To fulfill its purpose, the Act necessarily authorized reimbursement for all the resources necessary for *"effective access* to the judicial process."[10] "Congress must insure [that civil rights litigants] have the means to go to court and *to be effective once they get there,*"[11] because "[i]f the cost of private enforcement actions becomes too great, there will be no private enforcement."[12] And, if prevailing plaintiffs or their attorneys must bear the burden of prohibitive expert witness fees, the civil rights laws will be enforced either less frequently or less effectively than Congress intended.

**5.** One commentator has suggested that § 1920 should limit the amounts of costs awarded incident to attorney's fees for the basic categories of costs that the statute covers. *See* Bartell, Taxation of Costs and Awards of Expenses in Federal Court, 101 FRD 553, 595–96 (1984).

**6.** 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975).

**7.** S.Rep. No. 1011, 94th Cong.2d Sess. 6 (1976), U.S.Code Cong. & Admin.News 1976, pp. 5908, 5913.

**8.** 122 Cong.Rec., 35,123 (1976) (emphasis added).

**9.** S.Rep. No. 1011, 94th Cong.2d Sess. 2 (1976), U.S.Code Cong. & Admin.News 1976, p. 5910; *see also, e.g.,* 122 Cong.Rec. 31,471, 33,313 (1976).

**10.** H.R.Rep. No. 1558, 94th Cong., 2d Sess. 1 (1976) (emphasis added).

**11.** 122 Cong.Rec. 33,313 (1976) (emphasis added).

**12.** S.Rep. No. 1011, 94th Cong., 2d Sess. 6 (1976), U.S.Code Cong. & Admin.News 1976, p. 5913. *See also Evans v. Jeff D.,* —— U.S. ——, ——, 106 S.Ct. 1531, 1546–50, 89 L.Ed.2d 747 (1986) (Brennan, J., dissenting).

Although *Woodworkers* involves a prevailing civil rights defendant unaffected by these policy considerations, the statute does not distinguish between prevailing parties as to the expenses that are reasonable, and *Christiansburg Garment Co. v. E.E.O.C.*[13] requires that, when the complaint brought proves to be frivolous or unfounded, the defendant must be awarded whatever expenses the plaintiff might have recouped. The rule propounded by the majority today in the case of a prevailing civil rights defendant applies equally to victorious civil rights plaintiffs. Although today's application of the rule affronts no congressional policy, its primary effect in the future will be seen in the financial handicap it imposes on the civil rights plaintiffs that Congress sought to assist.

As the Eleventh Circuit has written in *Dowdell v. City of Apopka, Fla.*:

> Reasonable attorneys' fees under the Act must include reasonable expenses because attorneys' fees and expenses are inseparably intertwined as equally vital components of the costs of litigation. The factually complex and protracted nature of civil rights litigation frequently makes it necessary to make sizeable out-of-pocket expenditures which may be as essential to success as the intellectual skills of the attorneys. If these costs are not taxable, and the client, as is often the case, cannot afford to pay for them, they must be borne by counsel, reducing the fees award correspondingly.
>
> \*   \*   \*   \*   \*   \*
>
> ... [I]f the real income of civil rights litigators is decreased because they must absorb costs which are generally billable in other types of cases, the market result will be to channel attorneys toward more remunerative types of litigation. Decreasing the supply of attorneys necessarily decreases the access to the courts of victims of civil rights violations.[14]

## III.

The linchpin of the majority opinion is its conclusion that expert witness fees are sufficiently analogous to attorney's fees that both should be controlled by the guidelines set out in *Alyeska*. Despite this perceived analogy, the majority denies that Congress might have intended expert witness fees and other out-of-pocket expenses to be included as incidental expenses within an award of attorney's fees or costs. In so holding, the majority takes a path inconsistent with that chosen by every other circuit. It supports this novel result by reasoning that, because Congress has expressly provided for the award of expert witness fees in some statutes, it must therefore have intended to exclude them in all other instances, and by finding that the word "costs" refers only to those limited costs specified in § 1920.

The fact that Congress has expressly mentioned expert witness fees in addition to attorney's fees and costs in more recently adopted expense-shifting statutes does not persuade me that the fee-shifting phrases in the Civil Rights Act, the Clayton Act, and all other earlier enacted statutes were intended to exclude them. Over two-thirds of the statutes cited by the majority were enacted within the last ten years, and all were enacted within the last fifteen. Consequently, I do not find them determinative of the intent that Congress had when it enacted such statutes as the Clayton Act a hundred years ago, long before expert witness fees became so substantial and common-place as to warrant express reference. Neither should such interpretation by negative implication override the explicit legislative history of a more recently enacted statute, such as the Civil Rights Attorneys' Fees Awards Act.

Circuit courts from every circuit, in cases arising under § 1988, have allowed the prevailing party to recover expert witness fees or other expenses of litigation not enumer-

---

**13.** 434 U.S. 412, 98 S.Ct. 694, 54 L.Ed.2d 648 (1978).

**14.** 698 F.2d 1181, 1190–91 (11th Cir.1983).

ated in § 1920, either as costs or as part of attorney's fees.[15]

The First Circuit, in *Palmigiano v. Garrahy*,[16] approved the inclusion of all reasonable and necessary expenses in awards of attorney's fees under § 1988.

The Second Circuit, in *Beazer v. New York City Transit Authority*,[17] awarded the expenses of a pre-trial hearing and trial preparation under § 1988.

The Third Circuit, in *Wehr v. Burroughs*,[18] has awarded LEXIS charges as a reasonable expense of litigation included within an award of attorney's fees.

· The Fourth Circuit, in *Wheeler v. Durham City Board of Education*,[19] approved the award of copying, long distance telephone and travel expenses, along with all other out-of-pocket expenditures by a successful civil rights attorney.

In *Berry v. McLemore*[20] and *Jones v. Diamond*,[21] cases the majority today overrules, this circuit has awarded expert witness fees under § 1988.

The Sixth Circuit, in *Northcross v. Board of Education of Memphis City Schools*,[22] held that, although costs such as expert witness fees that were paid to third parties could not be considered part of attorney's fees, all other out-of-pocket expenses normally billed to a fee paying client should be included in § 1988 fee awards. The court approved the award of expert witness fees under the district court's Rule 54(d) discretion, independent of the attorney's fee statute.

The Seventh Circuit has frequently addressed the issue, permitting the award of all reasonable and necessary costs of litigation in *Redding v. Fairman*,[23] and specifically approving the award of expert witness fees under § 1988 in *Heiar v. Crawford County*[24] and in *Strama v. Peterson*.[25] Other Seventh Circuit cases have permitted the award of telephone, postage, copying, deposition, and travel expenses,[26] paralegals' hourly fees,[27] or simply "all reasonable out-of-pocket litigation expenses."[28]

The Eighth Circuit, in *Easley v. Anheuser-Busch, Inc.*,[29] has awarded expert witness fees for in-court testimony and, in *American Family Life Assurance Co. v. Teasdale*,[30] for pre-trial consultations. It has also approved the award of all reasonable out-of-pocket expenses under § 1988.[31]

---

**15.** *See generally*, Bartell, *supra* note 5 (collecting cases in addition to those cited here).

**16.** 707 F.2d 636, 637 (1st Cir.1983). *Cf. Wildman v. Lerner Stores Corp.*, 771 F.2d 605, 612, 614 (1st Cir.1985).

**17.** 558 F.2d 97, 100 (2d Cir.1977), *rev'd on other grounds*, 440 U.S. 568, 99 S.Ct. 1355, 59 L.Ed.2d 587 (1979).

**18.** 619 F.2d 276, 284 (3d Cir.1980); *see also Walker v. Robbins Hose Co.*, 622 F.2d 692, 694–95 (3d Cir.1980); *Id.* at 695–97 (Sloviter, J., dissenting).

**19.** 585 F.2d 618, 623–24 (4th Cir.1978).

**20.** 670 F.2d 30, 34 (5th Cir.1982). *See also Richardson v. Byrd*, 709 F.2d 1016, 1023 (5th Cir.), *cert. denied*, 464 U.S. 1009, 104 S.Ct. 257, 78 L.Ed.2d 710 (1983) (awarding paralegal fees).

**21.** 636 F.2d 1364, 1382 (5th Cir.), *cert. denied*, 453 U.S. 950, 102 S.Ct. 27, 69 L.Ed.2d 1033 (1981).

**22.** 611 F.2d 624, 639–40 (6th Cir.1979), *cert. denied*, 447 U.S. 911, 100 S.Ct. 2999, 64 L.Ed.2d 862 (1980).

**23.** 717 F.2d 1105, 1119 (7th Cir.1983), *cert. denied*, 465 U.S. 1025, 104 S.Ct. 1282, 79 L.Ed.2d 685 (1984).

**24.** 746 F.2d 1190, 1203–04 (7th Cir.1984), *cert. denied*, — U.S. —, 105 S.Ct. 3500, 87 L.Ed.2d 631 (1985).

**25.** 689 F.2d 661 (7th Cir.1982).

**26.** *Heiar, supra; Mary Beth G. v. City of Chicago*, 723 F.2d 1263, 1282 (7th Cir.1983); *Strama, supra.*

**27.** *Heiar, supra: Strama, supra.*

**28.** *Henry v. Webermeier*, 738 F.2d 188, 192 (7th Cir.1984).

**29.** 758 F.2d 251, 257 (8th Cir.1985).

**30.** 733 F.2d 559, 571 (8th Cir.1984).

**31.** *Id.*

The Ninth Circuit, in *Thornberry v. Delta Airlines, Inc.*,[32] awarded paralegal expenses, the costs of travel, and all out-of-pocket expenses under § 1988. It adopted the position of the Sixth Circuit in *Northcross*, allowing expert witness fees and other third-party payments to be awarded under Rule 54(d) rather than under § 1988.

The Tenth Circuit, in *Ramos v. Lamm*,[33] awarded similar costs, including expert witness fees, and approved the award of all costs that would normally be billed separately to clients by a typical law firm in the area.

As I have already noted, in *Dowdell v. City of Apopka, Fla.*,[34] the Eleventh Circuit awarded all reasonable expenses not normally absorbed by the attorney as overhead,[35] even though it does not allow similar expenses to be awarded under Rule 54(d) discretion.[36] The Court wrote "[w]e reject any interpretation of "reasonable costs" which would penalize attorneys for undertaking civil rights litigation. 'No one expects a policemen, or an office holder, to pay for the privilege of enforcing the law.' "[37] And the District of Columbia Circuit has held, in *Laffey v. Northwest Airlines, Inc.*,[38] that § 1988 authorizes the award of all reasonable costs normally passed on to clients. The court wrote

> [W]e need not attempt to trace an unwavering line between those out-of-pocket expenses which are compensable and those which are not. The line of division—as with the hourly rate—should fall where the market has placed it. Some law firms routinely pass such costs on; others charge slightly higher fees

and absorb those costs. It would grant a windfall to attorneys to reimburse them for expenses which normally are absorbed as part of their overhead; it would penalize them to deny compensation for expenses which they expect to pass directly to clients. The appellees are entitled to these costs upon showing that such costs are of a type passed on by the firms involved to private clients.[39]

Until today, no circuit has limited the award of litigation expenses incidental to attorney's fees under § 1988 to the costs enumerated in § 1920.[40] None has found reason to treat expert witness fees as sui generis, and none has applied *Alyeska* in this context.

## IV.

The majority takes *Alyeska* as its guide, although that case does not reach, and certainly does not determine, the question of what adjuvant expenses may be included within a statutorily authorized award of attorney's fees. The *Alyeska* Court refused "to fashion a far-reaching exception to [the] 'American Rule' "[41] that would permit district courts to award attorney's fees *without statutory authorization* whenever a plaintiff, acting as a "private attorney-general," vindicated a statutorily endorsed public policy. The Court held only that Congress, not federal courts, must dictate which statutes, when enforced by private citizens, warrant the recovery of attorney's fees.

The *Alyeska* opinion refers to § 1920 in recounting the history of the American courts' authority to award attorney's fees.

**32.** 676 F.2d 1240, 1244–45 (9th Cir.1982), *vacated on other grounds*, 461 U.S. 952, 103 S.Ct. 2421, 77 L.Ed.2d 1311 (1983).

**33.** 713 F.2d 546, 558–60 (10th Cir.1983).

**34.** 698 F.2d 1181, 1188–92 (11th Cir.1983) (quoting remarks of Sen. Tunney, 122 Cong.Rec. 33,-313 (1976)).

**35.** *See also Allen v. U.S. Steel Corp.*, 665 F.2d 689, 696–97 (5th Cir.1982) (deposition and paralegal expenses).

**36.** *See, e.g., Loughan v. Firestone Tire & Rubber Co.*, 749 F.2d 1519 (11th Cir.1985); *Kivi v. Na-*

*tionwide Mutual Insurance Co.*, 695 F.2d 1285, 1289 (11th Cir.1983).

**37.** 698 F.2d at 1191.

**38.** 746 F.2d 4, 30 (D.C.Cir.1984), *cert. denied,* —— U.S. ——, 105 S.Ct. 3488, 87 L.Ed.2d 622 (1985).

**39.** *Id.*

**40.** *See also* Bartell, *supra* note 5 at 589–96.

**41.** 421 U.S. at 247, 95 S.Ct. at 1616.

It traces the present version of § 1920 back to an 1853 statute that permitted certain enumerated costs, "and no other compensation [to] be taxed and allowed to attorneys."[42] The Court suggests in footnote dicta that, although there is no similar language in the present version of § 1920, "nothing ... indicates a congressional intention to depart from" the exclusion of other costs and fees mandated by the 1853 rule.[43]

Immediately thereafter, the Court adds that neither the 1853 statute nor any of its successors have been construed to interfere "with the historic power of equity" to award *attorney's fees* in limited circumstances, such as for the recovery of a common fund, willful disobedience of a court order, or bad faith litigation.[44] The Court does not imply that these examples bound a court's equitable powers to tax the costs of litigation. It concludes only that these three exceptions "are unquestionably assertions of inherent power in the courts to allow attorneys' fees in particular situations, unless forbidden by Congress, [and that] none of the exceptions is involved here."[45]

Attorney's fees are not synonymous with costs, and the Supreme Court has long ago held that the 1853 attorney's fee statute does not deal "expressly or by implication with the subject of taxing as costs the expense of [experts or stenographers]."[46] The *Alyeska* dictum does not require us to limit the costs that a district court may tax to those enumerated in § 1920, and *Alyes-*

*ka* clearly has no bearing on fee awards authorized by statute.

Recourse to *Alyeska* is particularly inappropriate in § 1988 cases. As the legislative history of that section repeats time and again, § 1988 was enacted expressly to counteract the effect of the *Alyeska* decision.[47] The House Report notes that "civil rights litigants were suffering very severe hardships because of the *Alyeska* decision,"[48] that its effect was "devastating," and that it might "as a practical matter, repeal the civil rights laws for most Americans."[49] Similarly, the Senate Report begins by stating that the Act was intended to remedy the gaps created in our civil rights laws by *Alyeska*.[50] To impose the limitations and policies of *Alyeska* on fee awards under § 1988 is to disregard entirely the primary congressional purpose behind its enactment. The traditional limitations of the American Rule, of *Alyeska*, of § 1920, and of Fed.R.Civ.P. 54(d) do not apply to awards made pursuant to § 1988, because that statute is based upon policies antithetical to those restrictions.[51]

## V.

In *Christiansburg Garment Co. v. E.E. O.C.*,[52] the Supreme Court held that a prevailing civil rights defendant should be awarded attorney's fees under § 1988 only when the plaintiff's suit was frivolous, unreasonable, or unfounded.

The majority decides that, because a fee-shifting statute applies in *Woodworkers*,

---

**42.** *Id.* at 253, 95 S.Ct. at 1620.

**43.** *Id.* at 255 nn. 28 & 29, 95 S.Ct. at 1621 nn. 28 & 29.

**44.** *Id.* at 257–58, 95 S.Ct. at 1621–22. (emphasis added).

**45.** *Id.* at 259, 95 S.Ct. at 1622.

**46.** *In re Peterson*, 253 U.S. 300, 317, 40 S.Ct. 543, 549, 64 L.Ed. 919 (1920); *see also Newton v. Consolidated Gas Co.*, 265 U.S. 78, 83, 44 S.Ct. 481, 482–83, 68 L.Ed. 909 (1924).

**47.** *See, e.g.*, S.Rep. No. 1011, 94th Cong., 2d Sess. 1, 4–6 (1976); H.R.Rep. No. 1558, 94th Cong., 2d Sess. 2–3 (1976); 122 Cong.Rec. 31,-

472, 31,474, 33,314, 35,122–28 (1976). *See also Evans v. Jeff D.*, —— U.S. ——, ——, 106 S.Ct. 1531, 1546, 1549, 89 L.Ed.2d 747 (1986) (Brennan, J., dissenting).

**48.** H.R.Rep. No. 1558, 94th Cong., 2d Sess. 2 (1976).

**49.** 122 Cong.Rec. 35,128 (1976).

**50.** S.Rep. No. 1011, 94th Cong., 2nd Sess. 1 (1976).

**51.** *Dowdell*, 698 F.2d at 1189 n. 12 (11th Cir. 1983).

**52.** 434 U.S. 412, 98 S.Ct. 694, 54 L.Ed.2d 648 (1978).

and because the statute does not expressly permit expert witness fees, the court has no authority to award them, presumably not even under the *Alyeska* criteria which are to be applied in the absence of a fee-shifting statute. The majority ignores the similarity between the *Alyeska* standard of vexatious or oppressive actions and the *Christiansburg* standard of unfounded or vexatious litigation: expert witness fees that might have been taxed to the plaintiff for bringing an unfounded tort suit may no longer be taxed for bringing an equally unfounded civil rights or employment discrimination action. Even if Congress did not intend that expert witness fees be awarded as a component of attorney's fees, as I believe it did, it surely did not intend by its reference to attorney's fees to lessen the courts' general authority to award other costs as a deterrent to frivolous litigation. Yet that is the result of the majority's rule.

I believe that the *Woodworkers* district court reached the right result for the right reasons. It found that the suit had a reasonable basis and applied *Christiansburg* to deny the defendant attorney's fees. It properly applied the same standard and invoked the same discretion to deny expert witness fees that might have constituted a reasonable expense incidental to the award of attorney's fees. And although, for reasons I will discuss in the next section, the court also had discretion under Rule 54(d) to tax expert witness fees as costs, it declined to do so. The court's denial of the award should, therefore, be affirmed.

## VI.

Had the plaintiff prevailed in *Gibbons*, it would have been entitled both to treble damages and "the cost of suit, including a reasonable attorney's fee." [53] The rule adopted by the majority would not permit such a successful plaintiff to recover expert witness fees and, I submit, by inexorable logical extension, any other out-of-pock-et expenses not enumerated in § 1920 for which the plaintiff's counsel would normally have billed his client. Although some circuit courts have reached the same result in Clayton Act litigation, this seems to me to be incorrect. Allowing a prevailing party treble damages, attorney's fees, and even, at times, prejudgment interest, but denying recovery of all of the other expenses incident to litigation is anomalous. There would be no reason to specify by statute that the cost of suit might be awarded if those costs referred only to the expenses ordinarily taxed to the loser. As Professor Moore points out, "had Congress intended 'cost of suit' [in the Clayton Act] to include only taxable costs, it would have said so." [54]

In *Gibbons*, however, the defendant prevailed and no statutory fee-shifting provision entitled it to attorney's fees. In the absence of any other provision, Fed.R. Civ.P. 54(d) controls. It is succinct:

> Except when express provision therefore is made either in a statute of the United States or in these rules, costs shall be allowed as of course to the prevailing party unless the court otherwise directs;
> . . .

That rule does not define the term "costs." The majority construes it to restrict the definition of "costs" to those costs specified in § 1920. It does so by finding that § 1920 is an express statutory provision that governs, and provides the exclusive authority for, the award of expert witness fees, obviating the discretion allowed by Rule 54(d), and prohibiting the taxing of any costs not listed therein.

Section 1920 does not on its face purport to be exclusive. It does not say, "only the following costs" shall be allowed. Neither does it provide expressly for the taxing of expert witness fees. Its phrasing is permissive because it was revised, after enactment of the Federal Rules, in recognition

---

**53.** 15 U.S.C. § 15 (1982).

**54.** 6 J. Moore, W. Taggart & J. Wicker, Moore's Federal Practice § 54.71[3] (2d ed. 1982).

of the discretion that Rule 54(d) affords.[55] It is not, therefore, the kind of "express provision" that is an exception according to the terms of Rule 54(d). If it were, then § 1920 would control every case, and Rule 54(d) would be completely redundant, without any independent force or meaning.

Even if the majority were correct in holding that § 1920 is exclusive, the majority does not follow this interpretation to its logical conclusion, for the majority holds that, in the exceptional circumstances borrowed from *Alyeska, § 1920 does not apply* and some other unspecified authority affords the court broader discretionary powers. If, on the other hand, the majority means that § 1920 is not *always* exclusive, then it fails to explain how § 1920 can abrogate the discretion Rule 54(d) appears to give, and why expert witness fees should be treated differently from all other costs.

Those circuits that have refused to permit the taxation of expert witness fees under Rule 54(d) have, like the majority, relied on a 1932 Supreme Court decision, *Henkel v. Chicago, St. Paul, Minneapolis & Omaha Railway,*[56] in which the Court wrote that expert witness fees were included within, and limited to, the per diem and travel allowances for ordinary witnesses in 28 U.S.C. §§ 600(a) & (c) (precursors of 28 U.S.C. §§ 1920 & 1821). The Court held that federal courts had no authority, either in their discretion or under state law, to award as costs compensation to witnesses in excess of the statutory amount.[57]

Although the issue in *Henkel* was the same as that now presented, the district court powers that it described have since changed. *Henkel* was decided before the adoption of the Federal Rules of Civil Procedure and before the merger of actions at law and equity. It was written in answer to a certified question inquiring whether district courts had the authority to tax expert witness fees as costs in a case at law. At that time, courts sitting in law had no power to award costs not expressly granted by statute.[58] At equity, as *Alyeska* affirms, courts have always retained the power to award fees not specified by statute.[59] With the merger of law and equity, Rule 54(d) gave federal courts in all actions the broader discretion previously afforded only to courts of equity. As Judge Frank wrote:

> [Rule 54(d)] appears to have adopted, for all suits covered by it, the previous federal practice in equity, according to which the trial court had wide discretion in fixing costs, a discretion not reviewable unless manifestly abused.... [60]

This conclusion is confirmed by Wright & Miller who state that Rule 54(d) today "makes the allowance of costs discretionary and, thus, adopts the practice formerly followed in equity rather than at law." [61]

Since the adoption of Rule 54(d), the Supreme Court has only once addressed the district courts' power to tax costs, and the majority fails to consider fully the significance of that decision. *Farmer v. Arabian*

**55.** 1948 United States Code Congressional Service 1887–88 (80th Cong., 2d Sess.).

**56.** 284 U.S. 444, 52 S.Ct. 223, 76 L.Ed. 386 (1932).

**57.** *Id.* at 446, 52 S.Ct. at 224.

**58.** *See* 10 C. Wright, A. Miller & M. Kane, Federal Practice & Procedure § 2665, at 170 (2d ed 1983); Payne, Costs in Common Law Actions in the Federal Courts, 21 Va.L.Rev. 397, 399–400 (1935).

**59.** *See Supra* note 53. *See also In re Peterson,* 253 U.S. 300, 316, 40 S.Ct. 543, 548, 64 L.Ed. 919 (1920).

**60.** *Harris v. Twentieth Century Fox Film Corp.,* 139 F.2d 571, 572 n. 1 (2d Cir.1943); *see also Cox v. Maddux,* 285 F.Supp. 876, 879 (E.D.Ark. 1968); *Farrar v. Farrar,* 106 F.Supp. 238, 241 (W.D.Ark.1952); *Andresen v. Clear Ridge Aviation,* 9 F.R.D. 50 (D.Neb.1949); *Abel v. Loughman,* 1 F.R.D. 734 (E.D.N.Y.1941); 4 C. Wright & A. Miller Federal Practice and Procedure: Civil § 1044 at 152.

**61.** 10 C. Wright, A. Miller & M. Kane, Federal Practice & Procedure § 2665, at 171 (2d ed. 1983).

*American Oil Company* [62] makes clear that Rule 54(d) authorizes a court, in its discretion, to tax costs in excess of those mentioned in § 1920. As several circuits have noted, it modifies the lingering effect of *Henkel.* [63]

In *Farmer*, no fee-shifting statute applied. The district court had refused to tax as costs litigation expenses for witness travel and overnight transcripts. While the Supreme Court affirmed this disallowance, the Court did not rest its decision on a determination of whether § 1920 permitted these costs or on some other rule limiting the taxation of costs. Instead it relied only on Rule 54(d), saying:

> We do not read (Rule 54(d) ] as giving district judges unrestrained discretion to tax costs to reimburse a winning litigant for every expense he has seen fit to incur in the conduct of his case. Items proposed by winning parties as costs should always be given careful scrutiny.... [T]he discretion given district judges to tax costs should be sparingly exercised with reference to expenses not specifically allowed by statute. [64]

The Court's conclusion reveals its premise: Rule 54(d) gives the district court discretion to award costs not enumerated in § 1920.

Although *Farmer* did not involve expert witness fees, the Court noted with approval that the district court denied the excess costs because they were not indispensable to the litigation and had not received prior court approval, which might have kept the costs to a minimum or alerted the parties in advance that they would be taxable. [65] These two considerations—indispensability and prior court approval—have been taken as guidelines by those circuits that permit courts the discretion to tax expert witness fees under Rule 54(d).

The First Circuit has permitted the discretionary award of expert witness fees for courtroom testimony, noting that an express finding that the testimony was indispensable is usually required, but that prior court approval will suffice. [66] Indeed, the First Circuit's leading case reversed an award of attorney's fees under the *Alyeska* standards at the same time that it upheld an award of expert witness fees under *Farmer.* [67]

The Third Circuit, in the maritime tort case of *Roberts v. S.S. Kyriakoula D. Lemos,* [68] expressly permitted the award of expert witness fees "when the expert's testimony is indispensable to the determination of the case," or "played a crucial role in the resolution of the issues presented." [69] The court wrote:

> While *Farmer* commands perhaps a tight-fisted exercise of discretion in order to insure moderation in the cost of litigation, it does not mandate parsimony to the extent of precluding recovery of legitimate and indispensable litigation expenditures. [70]

Our own circuit has permitted expert witness fees to be awarded not only under § 1988, [71] but in cases of bad faith litiga-

**62.** 379 U.S. 227, 85 S.Ct. 411, 13 L.Ed.2d 248 (1964).

**63.** *See, e.g., Paschall v. Kansas City Star Co.*, 695 F.2d 322, 338 (8th Cir.1982), *rev'd on other grounds*, 727 F.2d 692 (1984); *Roberts v. S.S. Kyriakoula D. Lemos*, 651 F.2d 201, 206 (3d Cir.1981).

**64.** *Id.* at 235, 85 S.Ct. at 416.

**65.** *Id.* at 233–35, 85 S.Ct. at 415–16.

**66.** *Gradmann & Holler GMBH v. Continental Lines, S.A.*, 679 F.2d 272, 274 (1st Cir.1982); *see also Templeman v. Chris Craft Corp.*, 770 F.2d 245 (1st Cir.1985) (employment discrimination); *Heddinger v. Ashford Memorial Community Hospital*, 734 F.2d 81 (1st Cir.1984) (diversity).

**67.** *See Gradmann & Holler GMBH v. Continental Lines, S.A.*, 679 F.2d 272, 274 (1st Cir.1982).

**68.** 651 F.2d 201 (3d Cir.1981).

**69.** *Id.* at 206.

**70.** *Id.*

**71.** *Berry v. McLemore*, 670 F.2d 30, 34 (5th Cir. 1982); *Jones v. Diamond*, 636 F.2d 1364, 1382 (5th Cir.1981).

tion,[72] and when, after prior court approval, the testimony proved indispensable to the determination of the case.[73]

The Sixth Circuit has affirmed an award of expert witness fees in a civil rights case, rejecting the argument that such fees were expenses incidental to § 1988 attorney's fees, and awarding them instead "pursuant to the court's sound discretion under" § 1920 and Rule 54(d).[74] The district court had reduced the amount allowed to one-half the amount claimed because the expense had been incurred without prior approval of the court and was excessive.

The Eighth Circuit, like the Third, has permitted the award of expert witness fees adopting *Farmer* guidelines.[75] Although it did so in an antitrust case arising under the Clayton Act, the court relied only on *Farmer*, holding that "Fed.R.Civ.P. 54 authorizes district judges to award costs not specifically enumerated in 28 U.S.C. § 1821 [or § 1920]." It has reached the same result in cases that do not involve a fee-shifting statute.[76]

The Ninth Circuit permits the award of expert witness fees if the testimony is necessary to the case and the fees are reasonable. In *Thornberry v. Delta Airlines, Inc.*, it describes the court's authority to award these costs as limited to "special circumstances." However, it interprets these circumstances broadly, considering "the reasonable needs of the party in the context of the litigation."[77] While *Thornberry* was a civil rights case, to which § 1988 was applicable, the court relied only upon Rule 54(d).

The District of Columbia Circuit has found no authority for a court to award excess expert witness fees but qualified this rule by an exception "if the district court approves in advance or requires the testimony of a specially qualified witness who will furnish information or evidence not otherwise reasonably accessible to the court and whose appearance is determined to be critically important to the case."[78]

Other circuits have denied the award of expert witness fees in excess of the amount allowed ordinary witnesses by 28 U.S.C.

72. *Kinnear-Weed Corp. v. Humble Oil & Refining Co.*, 441 F.2d 631, 637 (5th Cir.), *cert. denied*, 404 U.S. 941, 92 S.Ct. 285, 30 L.Ed.2d 255 (1971). *But see Baum v. United States*, 432 F.2d 85 (5th Cir.1970) (Rule 54(d) discretion limited to statutory witness fees); *United States v. Kolesar*, 313 F.2d 835 (5th Cir.1963); *Green v. American Tobacco Co.*, 304 F.2d 70 (5th Cir.1962) (no discretion to award expert witness fees).

73. *Copper Liquor, Inc. v. Adolph Coors Co.*, 684 F.2d 1087, 1100 (5th Cir.1982) (Clayton Act).

74. *Northcross v. Board of Ed. of Memphis City Schools*, 611 F.2d 624, 640 (6th Cir.1979); *see also Smillie v. Park Chemical Co.*, 710 F.2d 271 (6th Cir.1983) (SEC action); *but see Murphy v. International Union of Operating Engineers*, 774 F.2d 114 (6th Cir.1985) (LMRDA action).

75. *Paschall v. Kansas City Star Co.*, 695 F.2d 322, 338–39 (8th Cir.1982), *rev'd on other grounds en banc*, 727 F.2d 692, *cert. denied*, — U.S. —, 105 S.Ct. 222, 83 L.Ed.2d 152 (1984); *see also Hiegel v. Hill*, 771 F.2d 358 (8th Cir. 1985) (§ 1983); *Easley v. Anheuser-Busch, Inc.*,

758 F.2d 251 (8th Cir.1985) (§ 1983); *Coleman v. Omaha*, 714 F.2d 804, 809 (8th Cir.1983) (employment discrimination); *Linneman Construction, Inc. v. Montana-Dakota Utilities Co., Inc.*, 504 F.2d 1365 (8th Cir.1974).

76. *Nemmers v. City of Dubuque*, 764 F.2d 502, 506 (8th Cir.1985) (zoning action). *See also Nebraska Public Power Dist. v. Austin Power, Inc.*, 773 F.2d 960 (8th Cir.1985) (diversity).

77. 676 F.2d 1240, 1245 (9th Cir.1982), *vacated on other grounds*, 461 U.S. 952, 103 S.Ct. 2421, 77 L.Ed.2d 1311 (1983); *see also Shakey's Inc. v. Covalt*, 704 F.2d 426 (9th Cir.1983) (trademark infringement). *But see Twentieth Century Fox Film Corp. v. Goldwyn*, 328 F.2d 190, 224 & n. 67 (9th Cir.1964).

78. *Quy v. Air America, Inc.*, 667 F.2d 1059, 1066 n. 11 (D.C.Cir.1981) (diversity); *See also Moore v. National Association of Securities Dealers, Inc.*, 762 F.2d 1093, 1128 n. 20 (D.C.Cir.1985) (employment discrimination); *Postow v. OBA Federal Savings & Loan Ass'n*, 627 F.2d 1370 (C.A.D.C.1980) (Truth in Lending Act).

§ 1821.[79] The Second[80] and Fourth[81] Circuits have addressed the issue only in antitrust cases and have held, I believe incorrectly, that the Clayton Act's allowance of "cost of suit" does not permit awards in excess of § 1920 costs. The Seventh Circuit recognizes that courts "retain some discretion to tax costs not specifically provided for by statute," citing *Farmer*, but limits that discretion to unspecified "exceptional circumstances."[82] Finally, the Tenth[83] and Eleventh[84] Circuits have categorically denied district courts the discretionary authority to award witness fees in excess of the amounts specified in § 1821, although they have not extended this limitation to § 1988 cases.

In sum six circuits permit the award of expert witness fees when the testimony is indispensable or when advance court approval is obtained, in accordance with the Supreme Court's dictum in *Farmer*, and as we have held in prior cases. Two circuits categorically deny district courts any authority under the Clayton Act, and two deny them any authority under Rule 54(d), to award costs not provided for by statute. But none engrafts the *Alyeska* attorney's-fee exceptions onto a rewritten § 1920.

Pursuant to Rule 54(d), the district court should be permitted in its discretion, sparingly exercised, to award a prevailing party expert witness fees, reasonable in amount, for courtroom testimony in cases in which the testimony was indispensable to resolution of the case. District courts should be given discretion to adopt local rules limiting the award of such fees to cases in which prior court approval was given.

## VII.

In *Gibbons*, the district court carefully reviewed the evolving law in our circuit, and in the Third, Sixth, and Eighth Circuits before concluding, as do I, and as did those circuits, that *Farmer* has modified what remains of *Henkel*, and that expert witness fees in excess of those allowed by statute may be awarded if they were indispensable to the litigation. The district court noted that, "It is particularly appropriate to award defendants the costs of indispensable expert witness testimony under the circumstances of this case, where the defendants were forced to defend an extremely burdensome, vexatious, and totally meritless array of antitrust claims."[85] It carefully reviewed the importance of the testimony of each of the three expert witnesses whose fees were sought to be taxed and concluded that the testimony of only two was "crucial and indispensable to the presentation of the defendants' case." It also examined the reasonableness of the fees of those two witnesses before ordering that they be taxed. The *Gibbons* court applied the right test and, in a carefully reasoned exercise of its discretion, reached a result that I would affirm.

## VIII.

The costs of litigation, as we all know, have become staggering. A plaintiff may put a defendant or a defendant may put a plaintiff to a tremendous amount of ex-

---

**79.** *See* Bartell, *supra* note 5, at 591.

**80.** *Berkey v. Eastman Kodak*, 603 F.2d 263 (1974), *cert. denied*, 444 U.S. 1093, 100 S.Ct. 1061, 62 L.Ed.2d 783 (1980); *Trans World Airlines v. Hughes*, 449 F.2d 51, 81 (2d Cir.1971).

**81.** *Speciality Equipment & Machinery Corp. v. Zell Motor Car Co.*, 193 F.2d 515, 520–21 (4th Cir.1952).

**82.** *Illinois v. Sangamo Construction Co.*, 657 F.2d 855, 865 n. 14 (7th Cir.1981); *see also Sanchez v. Schwartz*, 688 F.2d 503 (7th Cir.1982) (§ 1988); *Adams v. Carlson*, 521 F.2d 168 (7th Cir.1975) (prisoner's suit); *Fey v. Walston & Co.*, 493 F.2d 1036 (7th Cir.1974) (SEC action).

**83.** *Cleverock Energy Corp. v. Trepel*, 609 F.2d 1358, 1363 (10th Cir.1979) (diversity); *but see Ramos v. Lamm*, 713 F.2d 546 (10th Cir.1983) (awarding expert witness fees under § 1988 as incidental expense).

**84.** *Loughan v. Firestone Tire & Rubber Co.*, 749 F.2d 1519 (11th Cir.1985). *Kivi v. Nationwide Mutual Insurance Co.*, 695 F.2d 1285, 1289 (11th Cir.1983). *But see Dowdell v. City of Apopka, Fla.*, 698 F.2d 1181, 1188–89 (11th Cir.1983) (awarding all out-of-pocket expenses under § 1988).

**85.** *J.T. Gibbons v. Crawford Fitting Co.*, 102 F.R.D. 73, 86 (E.D.La.1984).

pense, apart from the cost of obtaining an attorney's services, in defending or prosecuting a case. One cause of this expense is the unavoidable necessity of expert witness testimony to establish or rebut many legal claims, especially those raised in civil rights and antitrust cases. A study cited by a student writer suggests that expert testimony controls the outcome in two-thirds of all cases, and that expert witness fees are second only to attorney's fees as the largest litigation expense.[86]

A rule that denies a prevailing party who is entitled to attorney's fees the right to recover the other costs for which his lawyer bills him gives the vindicated party only half a victory. Although the victor in litigation is not entitled to spoils, he ought at least be able to invoke the court's discretion to make him whole.

---

**86.** *See* Note, Contingent Fees for Expert Witnesses in Civil Litigation, 86 Yale L.J. 1680, 1680 n. 1, 1681 n. 4 (1977).